[Civ. No. 17992. Third Dist. Mar. 26, 1979.]

MIDCAL ALUMINUM, INC., Petitioner, v.
BAXTER RICE, as Director, etc., Respondent;
CALIFORNIA RETAIL LIQUOR DEALERS ASSOCIATION,
Intervener.

## COUNSEL

Damrell, Damrell & Nelson, Frank C. Damrell and Scott Steffen for Petitioner.

Evelle J. Younger, Attorney General, L. Stephen Porter, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Respondent.

William T. Chidlaw for Intervener.

## OPINION

**REYNOSO, J.**—The recent Supreme Court opinion of *Rice v. Alcoholic Bev. etc. Appeals Bd.* (1978) 21 Cal.3d 431 [146 Cal.Rptr. 585, 579 P.2d

476], which invalidated California's price maintenance laws relating to retail sales of distilled spirits, gives rise to this litigation. By writ of mandate Midcal Aluminum, Inc., seeks a determination as to the validity of the fair trade and price posting laws regulating the sale, both wholesale and retail, of wine in this state. We hold, as a logical axle of the *Rice* wheel, that the fair trade and price posting laws relating to wine are invalid—at the wholesale and retail level.

## 1. *The Background*

An accusation was filed against petitioner before the Department of Alcoholic Beverage Control charging that on or about July 21, 1978, it sold or caused to be sold to a licensed retailer 27 cases of wine at prices less than the selling prices contained in the effective price schedule filed with the department by the E & J Gallo Winery. The second count charged that petitioner had sold or had caused to be sold to certain retailers wine for which there was no effective fair trade contract duly filed with the department. The petitioner stipulated to the truthfulness of the facts set forth in the accusation.

Petitioner entered into a further stipulation that "[T]he Department may, subject to a judicial determination of the constitutionality of Section 24850 et seq., Business and Professions Code and Rule 101 of Chapter 1, Title 4, California Administrative Code, impose a monetary penalty or suspension of [petitioner's] licenses as provided in Section 24880 of the Business and Professions Code."[1] Petitioner proceeded to file its petition for writ of mandate in this court.[2]

## 2. *Mandate Proceedings*

■ Mandate is an appropriate writ for the review of the exercise of quasi-judicial power by a constitutionally authorized statewide agency such as the Department of Alcoholic Beverage Control. (*Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 7 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351].) The writ is particularly appropriate in light of the following. First, petitioner attacks the validity of the fair trade and price posting laws on

---

[1] All statutory references are to the Business and Professions Code.

[2] The California Retail Liquor Dealers Association sought, and was granted, leave to file a complaint in intervention opposing the petition for a writ of mandate. This court subsequently issued an alternative writ of mandate and stayed further action on the accusation against petitioner. We stayed further action in enforcing the price posting provisions of the Alcoholic Beverage Control Act as to any licensee insofar as that act required the posting of minimum retail prices at which wines may be sold to the public.

their face; no material facts are in dispute. Second, important issues of statewide significance are raised. Third, petitioner is placed in the untenable position of having to choose to obey possibly conflicting federal and state laws and face a penalty under the one it chooses to disobey. Under such circumstances it would be improper to require petitioner to exhaust its administrative remedies. (*Sail'er Inn Inc.* v. *Kirby, supra,* 5 Cal.3d at pp. 6-7.)

We do not share respondent's fear that our assuming jurisdiction in this case will herald the inundation of similar petitions, attempting to bypass the Alcoholic Beverage Control Appeals Board for review of mere disciplinary orders through feigned constitutional issues. Petitioner has conceded the factual basis for the accusation and questions only the validity of the law. We do not review the accusation; we consider only the validity of the fair trade and price posting laws. It is doubtful that licensees in like position will feign constitutional issues; it is understood that if those issues are rejected the licensee will be left before the department to face accusations which it has admitted.

### 3. *The Rice Rationale*

In *Rice* v. *Alcoholic Bev. etc. Appeals Bd., supra,* 21 Cal.3d 431, the California Supreme Court held that the fair trade laws relating to the retail sale of distilled spirits violate the Sherman Antitrust Act (15 U.S.C. § 1 et seq.).[3] Their invalidity necessarily followed. In reaching its decision the court considered whether the fair trade laws are within the

---

[3]The intervener suggests that a recent United States Supreme Court decision, *New Motor Vehicle Bd.* v. *Orrin W. Fox Co.* (1978) 439 U.S. 96 [58 L.Ed.2d 361, 99 S.Ct. 403], casts doubt upon the reasoning of the California Supreme Court in *Rice.* Applicable statutes require an automobile manufacturer to obtain approval of the California New Motor Vehicle Board before opening or relocating a retail dealership within the market area of an existing franchise if the latter protests. Upon receiving a protest from an existing dealer the manufacturer is not allowed to establish or relocate the proposed dealership until the board holds a hearing and determines that there is not good cause for refusing to permit the establishment of the dealership. The United States Supreme Court held that the law is within the state action exception to the Sherman Antitrust Act. The court noted that a dealer protest serves only to trigger board action, the state does not attempt to authorize or immunize private conduct violative of the antitrust laws.

In finding that the alcoholic beverage price maintenance scheme is not within the state action exception to the antitrust laws the California Supreme Court noted that the reason that exception does not apply is that price fixing in the liquor industry involves private conduct, the substance of which is totally unconfined by state regulation. "There is no control, or 'pointed re-examination,' by the state." (21 Cal.3d at pp. 444-445.) This distinction was critical to the court's opinion in *Rice,* and the absence of state control over price maintenance relating to wine is fatal to those provisions as well as the distilled spirit provisions.

"state action" exception to the Sherman Antitrust Act and whether the Twenty-first Amendment to the United States Constitution allowed the state to enact such laws. Neither the state action exception nor the Twenty-first Amendment was found to provide a basis for upholding the fair trade laws relating to retail sale of distilled spirits.

■ The statutes and regulations relating to price maintenance of wine challenged in this proceeding bear no significant differences to the statutes and regulations relating to price maintenance of distilled spirits found to be invalid in *Rice* v. *Alcoholic Bev. etc. Appeals Bd., supra,* 21 Cal.3d 431. Under Business and Professions Code section 24862 no licensee may sell or resell to a retailer, and no retailer may buy any item of wine except at the selling or resale price contained in an effective price schedule or in an effective fair trade contract. No licensee is permitted to sell or resell to any consumer any item of wine at less than the selling or resale price contained in an effective price schedule or fair trade contract. Under section 24866 each grower, wholesaler and wine rectifier must make and file fair trade contracts and/or file schedules of the resale prices of wines. These sections result in price fixing in wine identical to that found to be repugnant to the Sherman Antitrust Act when applied to distilled spirits. (See *Rice* v. *Alcoholic Bev. etc. Appeals Bd., supra,* 21 Cal.3d at pp. 445-446; see also, *Capiscean Corporation* v. *Alcoholic Bev. etc. Appeals Bd.* (1979) 87 Cal.App.3d 996 [151 Cal.Rptr. 492], holding the price maintenance provisions relating to the retail price of wine to be invalid under *Rice.*) Our consideration is controlled by the reasoning of the Supreme Court in *Rice.* Unless there appears an independent basis for upholding the fair trade laws relating to wine we must declare those laws to be invalid.

We do not find the provisions of the fair trade laws relative to wholesale price maintenance different from those relative to retail price maintenance. Price fixing, whether at the wholesale or retail level, is violative of the Sherman Antitrust Act. (See *United States* v. *Topco Associates* (1971) 405 U.S. 596, 611-612 [31 L.Ed.2d 515, 527-528, 92 S.Ct. 1126]; *Kiefer-Stewart* v. *Seagram & Sons* (340 U.S. 211, 213-214 [95 L.Ed. 219, 223-224, 71 S.Ct. 259]; *United States* v. *Bausch & Lomb Co.* (1943) 321 U.S. 707, 720 [88 L.Ed. 1024, 1033, 64 S.Ct. 805]; *Dr. Miles Med. Co.* v. *John D. Park & Sons Co.* (1910) 220 U.S. 373 [55 L.Ed. 502, 31 S.Ct. 376].) The wholesale price maintenance provisions relating to wine cannot be upheld for the same reasons the retail price maintenance provisions were declared invalid in *Rice.*

The intervener suggests that the distinction between wine and distilled spirits renders *Rice* inapplicable. We cannot agree. All of the considerations involved in *Rice* apply to wine as well as to distilled spirits. Thus, the court in *Rice* noted that the price maintenance provisions have resulted in the elimination of any semblence of competition within the industry and that the consumer pays about the highest retail prices for liquor, beer and wine in the country, although the state levies one of the lowest excise taxes on these beverages. (21 Cal.3d at p. 455. See 1 Sen. Select Com. Rep. on Laws Relating to Alcoholic Beverages (1974) pp. 9 and 82-83.)

The purpose of the price maintenance provisions, to promote temperance and orderly marketing conditions, can be achieved by other means in regard to wine as well as distilled spirits. (See 21 Cal.3d at pp. 456-457.) The declared purposes of the fair trade laws relating to alcoholic beverages do not indicate that the protection of the California wine industry was a legislative consideration, nor do we find anything in the act so to suggest. (See Bus. & Prof. Code, § 24749.) That the provisions do not distinguish between California wines and imported wines indicates that protection of the California wine industry was not the purpose of the enactment of the provisions, as does the fact that the provisions are identical in result and operation to the distilled spirit price maintenance provisions. We conclude that the wine price maintenance provisions of the Business and Professions Code violate the Sherman Antitrust Act. (See *Capiscean Corporation* v. *Alcoholic Bev. etc. Appeals Bd., supra,* 87 Cal.App.3d 996.)[4]

5. *Nonseverability*

Respondent argues that the wholesale price posting requirements are valid and should be severed from the invalid portions of the statutes. We

---

[4]The intervener urges that the price maintenance provisions relating to wine are within the "state action" exception to the Sherman Antitrust Act and that the Twenty-first Amendment to the United States Constitution grants to the state the power to pass such laws over liquor. Essentially, intervener asks us to reconsider our Supreme Court's decision in *Rice.* We may do so, it is urged, because that court relied exclusively on federal law in declaring the price maintenance provisions relating to retail distilled spirits sales invalid, and, in intervener's view, the court erred in interpreting federal law. We disagree with intervener's view that the decisions of the California Supreme Court are open to reconsideration by a California Court of Appeal. As an appellate court we are bound by the decisions of the California Supreme Court. (See *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) The California Supreme Court carefully considered whether the California liquor price maintenance scheme was within the state action exception or saved by the Twenty-first Amendment, and concluded that neither exception applied. (*Rice, supra,* 21 Cal.3d at pp. 441-444, 447-457.) We are bound by that decision.

have noted that we find wholesale price fixing to be invalid. Intervener suggests that portions of sections 24862 and 24866 merely require each distributor to post a schedule of prices at which he will sell to retailers. The exchange of price information is not a violation of the antitrust laws when the exchange does not amount to price fixing. (*Treasure Val. Potato Bar. Ass'n.* v. *Ore-Ida Foods, Inc.* (9th Cir. 1974) 497 F.2d 203, cert. den. 419 U.S. 999 [42 L.Ed.2d 273, 95 S.Ct. 314]; *Gray* v. *Shell Oil Co.* (9th Cir. 1972) 469 F.2d 742, cert. den. 412 U.S. 943 [37 L.Ed.2d 403, 93 S.Ct. 2773].) Further, it is argued, a requirement that wine distributors file with the department a list of their selling prices to retailers is not invalid.

Respondent and intervener misread Business and Professions Code section 24866. That section requires: (1) each wine grower, wholesaler licensed to sell wine, and wine rectifier to post a schedule of selling prices of wine to retailers or consumers for which the resale price is not governed by a fair trade contract made by the person who owns or controls the brand, and (2) each of those entities to make and file a fair trade contract and a schedule of resale prices if a brand of wine is owned or controlled by them. Section 24862 provides that no licensee shall sell to a retailer, and no retailer shall buy any item of wine except at the selling or resale price contained in an effective price schedule or in an effective fair trade contract. A price schedule filed under section 24866 must contain the same information that a fair trade contract is required to contain, including selling and resale prices to retailers and consumers. (Bus. & Prof. Code, § 24869.)

The legislative scheme is not one which merely requires each distributor to specify prices. The scheme, as we explain, is for the purpose of fixing prices. No distributor is required to post such a schedule where a fair trade contract governs the price. Thus, the price posting requirements are intended to reach the same result as a fair trade contract. That identical information is required in a price schedule as in a fair trade contract supports our conclusion. The provisions of the Business and Professions Code relating to distilled spirits require a "schedule" of prices to be filed which fixes the prices (§ 24755), while a "price list" required to be filed by each distributor merely contains the prices. (§ 24756) There is no requirement that each wine distributor file a "price list"; the requirement is only that distributors file a "price schedule" where a fair trade contract does not govern. The use of the word "schedule" rather than "list" indicates that price fixing is the intended result of the price posting requirements. We note that the department has interpreted the price schedule filed by one distributor to bind other distributors of the

same brand of wine. The regulations of the department provide that only one distributor may file a price schedule for any brand of wine in a trading area. (Cal. Admin. Code, tit. 4, § 101 subd. (g).) Consequently, one of the charges against petitioner is that it sold wine for less than the price contained in a price schedule filed by E & J Gallo Winery.

As we interpret sections 24862 and 24866, the schedule of selling prices which must be filed where no fair trade contract governs binds other distributors to sell at the "scheduled" prices. The difference between fair trade contract control of prices and the price posting system is one of form rather than substance. (See *Rice* v. *Alcoholic Bev. etc. Appeals Bd.,* *supra*, 21 Cal.3d at p. 438.) We conclude that the price posting provisions result in price fixing and are invalid for that reason.

Let a peremptory writ of mandate issue ordering respondent to refrain from enforcing the fair trade and wine price posting provisions of the Alcoholic Beverage Control Act.[5]

Puglia, P. J., and Evans, J., concurred.

A petition for a rehearing was denied April 19, 1979, and intervener's petition for a hearing by the Supreme Court was denied May 24, 1979.

---

[5] More particularly, the following shall not be enforced: section 24850 et seq., and more particularly, sections 24862 and 24866 of the Business and Professions Code, and the regulations promulgated pursuant thereto, and more particularly section 101, chapter 1, title 4, California Administrative Code.