[Civ. No. 54605. First Dist., Div. One. Oct. 22, 1982.]

LEWIS-WESTCO & COMPANY, Petitioner, v.
ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD,
Respondent;
BAXTER RICE, as Director, etc., Real Party in Interest.

**COUNSEL**

Daniel B. Leraul and Leland, Parachini, Steinberg, Flinn, Matzger & Melnick for Petitioner.

George Deukmejian, Attorney General, and Matthew P. Boyle, Deputy Attorney General, for Respondent and for Real Party in Interest.

Thomas W. Latham and Evans, Latham & Campisi as Amici Curiae.

**OPINION**

**RACANELLI, P. J.**—Section 24756 of the Business and Professions Code (to which all section references apply unless otherwise noted) requires

every manufacturer, rectifier and wholesaler of distilled spirits to file and maintain with the Department of Alcoholic Beverage Control (Department) a written price list reflecting sales prices to retailers and to sell to retailers in compliance with the posted price list.[1]

In this extraordinary writ proceeding under section 23090, we consider the validity of the price posting statute and the promulgated implementing regulations (Cal. Admin. Code, tit. 4, § 100) in light of *Rice* v. *Alcoholic Bev. etc. Appeals Bd.* (1978) 21 Cal.3d 431 [146 Cal.Rptr. 585, 579 P.2d 476, 96 A.L.R.3d 613], which struck down companion retail price maintenance provisions and regulations determined to be in fatal conflict with the provisions of Sherman Antitrust Act, 15 United States Code section 1 et seq. For the reasons which we explain, we will conclude that the price posting provisions contained in section 24756, and implementing rule, are likewise invalid.[2]

The facts are undisputed. On or about July 26, 1979, petitioner, a licensed rectifier of distilled spirits, sold its products to five separate retailers at prices or quantity discounts other than as contained in price or quantity discount schedules on file with the Department in violation of section 24756 and rule 100. The Department suspended petitioner's license for 10 days as to each count, stayed upon stated conditions. On appeal to the Alcoholic Beverage Control Appeals Board (Board), petitioner challenged the Department's order contending that rule 100 is invalid under *Rice,* the

---

[1] Section 24756 provides: "Every distilled spirits manufacturer, brandy manufacturer, rectifier, and wholesaler shall file and maintain with the department a price list showing the prices at which distilled spirits are sold to retailers by the licensee. . . . Sales of distilled spirits to retailers by each distilled spirits manufacturer, brandy manufacturer, rectifier, and wholesaler shall be made in compliance with the price list of the licensee on file with the department."

[2] Under the relevant provisions of existing rule 100, the licensed seller or distributor of distilled spirits must file a written price schedule showing the sales price per case and the discounts offered (subd. a); the required monthly price and quantity discount schedules must be filed on or before the 15th day of the month preceding the effective date (subd. b(1)); a licensee can meet competitive prices on similar distilled spirits of a "competitive brand" (defined under subd. b(4) as a similar brand of spirits involving a price change within the range of $3 per case of the price posted by a competing licensee) by amendment to the posted price schedule lowering prices or increasing quantity discounts provided that a competitive quantity discount may not reduce the net price of the brand, type or size container below that of the competing brand for the same quantity (subd. f); multiple brand discounts are permitted only for assorted brands owned or controlled by the same person (subd. g); and a licensee is prohibited from advertising or offering to sell his products at a price or quantity discount other than as provided in the posted price schedules of amendments (subd. k). (Petitioner's violations were apparently grounded on its inability to post quantity discounts for assorted brands owned by more than one person.)

While we shall make only limited references to rule 100, our conclusions concerning the validity of the enabling statute will equally apply to the subordinate rule. (Cf. *Rice* v. *Alcoholic Bev. etc. Appeals Bd., supra,* 21 Cal.3d at p. 436.)

Sherman Act, the Robinson-Patman Act (15 U.S.C.A. § 13 et seq.) and the equal protection clause. In its written opinion affirming the decision of the Department, the Board concluded that although the price posting statute and Department rule constituted an invalid price fixing scheme under the rationale of *Rice* v. *Alcoholic Bev. etc. Appeals Bd.*, *supra*, 21 Cal.3d 431, and *Midcal Aluminum, Inc.* v. *Rice* (1979) 90 Cal.App.3d 979 [153 Cal.Rptr. 757], affirmed *sub nom. California Liquor Dealers* v. *Midcal Aluminum* (1980) 445 U.S. 97 [63 L.Ed.2d 233, 100 S.Ct. 937], it was nevertheless prohibited from declaring the statute unconsitutional under the provisions of California Constitution, article III, section 3.5,[3] and consequently refrained from determining the validity of the derivative rule as an "idle act."

Petitioner now renews its challenges below seeking to annul the order of the Board.[4]

Preliminary to our discussion of the merits, we review the recent line of decisions which have considered California's price maintenance legislation for alcoholic beverages. In its benchmark decision, the California Supreme Court held that the price maintenance provisions embodied in former section 24755 (repealed by Stats. 1980, ch. 1368, § 3) which required distilled liquors wholesalers to set minimum retail prices constituted a violation of the Sherman Act neither shielded by the "state action" exception nor saved by application of the Twenty-first Amendment of the United States Constitution. (*Rice* v. *Alcoholic Bev. etc. Appeals Bd.*, *supra*, 21 Cal.3d 431, 444-459.) Thereafter, in reliance on the *Rice* analysis, state courts uniformly have invalidated related price maintenance and regulatory provisions. (See *Capiscean Corp.* v. *Alcoholic Bev. etc. Appeals Bd.* (1979) 87 Cal.App.3d 996 [151 Cal.Rptr. 492] [price fixing in retail sale of wine]; *Midcal Aluminum, Inc.* v. *Rice, supra,* 90 Cal.App.3d 979[5]

---

[3]Section 3.5 provides: "An administrative agency, including an administrative agency created by the Constitution or an initiative statute, has no power: [¶] (a) To declare a statute unenforceable, or refuse to enforce a statute, on the basis of it being unconstitutional unless an appellate court has made a determination that such statute is unconstitutional; [¶] (b) To declare a statute unconstitutional; [¶] (c) To declare a statute unenforceable, or to refuse to enforce a statute on the basis that federal law or federal regulations prohibit the enforcement of such statute unless an appellate court has made a determination that the enforcement of such statute is prohibited by federal law or federal regulations."

[4]California Beer Wholesalers Association, a trade association of beer wholesalers, and Wine and Spirits Wholesalers of California, an association of wholesalers of distilled spirits, also sought review. Since the former made no effort to intervene below, and the latter was denied the right to intervene, neither has standing herein. (Cf. *Rice* v. *Alcoholic Bev. etc. Appeals Bd.*, *supra*, 21 Cal.3d at p. 436, fn. 4.) Thus, while we deny the petitions to intervene, we consider the briefs previously filed as amicus curiae.

[5]Following issuance of its writ of certiorari upon a petition in intervention, the United States Supreme Court rendered its opinion affirming the *Midcal* decision based entirely on

[price maintenance provisions for wholesale and retail sale of wine]; *Norman Williams Co.* v. *Rice* (1980) 108 Cal.App.3d 348 [166 Cal.Rptr. 563] [designation statute] reversed and remanded in *Rice* v. *Norman Williams Co.* (1982) 458 U.S. 654 [73 L.Ed.2d 1042, 102 S.Ct. 3294].) Petitioner argues that *Rice* v. *Alcoholic Bev. etc. Appeals Bd.*, *supra*, 21 Cal.3d 431, squarely controls the issue herein; that since section 24756 sanctions horizontal price fixing among liquor wholesalers, it likewise must fall as an inseparable part of the price maintenance structure considered in *Rice*. Respondents counter that neither Rice nor its progeny apply herein since those decisions construed legislation dealing with vertical and horizontal price fixing as distinguished from "price posting" by licensed wholesalers. Accordingly, we consider the reasoning in *Rice* and related precedents in order to determine whether the challenged statute violates the Sherman Act and, if so, whether antitrust immunity is afforded either under the "state action" exception announced in *Parker* v. *Brown* (1943) 317 U.S. 341 [87 L.Ed. 315, 63 S.Ct. 307], or by reason of the application of the Twenty-first Amendment. (See *Rice* v. *Alcoholic Bev. etc. Appeals Bd.*, *supra*, 21 Cal.3d 432 at pp. 439-451; see also *Rice* v. *Norman Williams Co.*, *supra*, 458 U.S. 654 [73 L.Ed.2d 1042];[6] *California Liquor Dealers* v. *Midcal Aluminum*, *supra*, 445 U.S. 97, 102-110 [63 L.Ed.2d 233, 241-246].)

■ It is well established that price fixing alone is illegal per se because it eliminates one form of competition. *U.S.* v. *Univis Lens Co.* (1942) 316 U.S. 241, 252 [86 L.Ed. 1408, 1419, 62 S.Ct. 1088]; *United States* v. *Trenton Potteries Co.* (1927) 273 U.S. 392, 397 [71 L.Ed. 700, 705, 47 S.Ct. 377, 50 A.L.R. 989].) It is equally settled that "any combination which tampers with the price stucture is unlawful. Although the participants of a price fixing scheme may be in no position to control the market, to the extent that they raise, lower or *stabilize* prices they violate the act, and this is so even if the prices fixed are reasonable. [Citations.]" (*Rice* v. *Alcoholic Bev. etc. Appeals Bd.*, *supra*, 21 Cal.3d at pp. 453-454; italics added.) ■ But in determining that the imposition of retail

---

the reasoning advanced in *Rice* (*California Liquor Dealers* v. *Midcal Aluminum*, *supra*, 445 U.S. 97, 100-101, 112-114 [63 L.Ed.2d 233, 240, 247-249].)

[6]We reject the claim advanced by respondents and amicus that *Norman Williams Co.* implicitly restricted—if not repudiated—the holding in *Rice*. The majority in *Norman Williams Co.*, after distinguishing *California Liquor Dealers* v. *Midcal Aluminum*, *supra*, 445 U.S. 97, dealing with a mandatory resale price maintenance activity, found no similar per se facial conflict with the Sherman Act and accordingly remanded to the California appellate court for further proceedings. (458 U.S. at p. 662 [73 L.Ed.2d at p. 1052].) (Cf. *Miller* v. *Oregon Liquor Control Com'n* (9th Cir. 1982) 688 F.2d 1222 (No 80-3376, July 7, 1982) [reversing finding of antitrust exception of Oregon wholesale price posting regulations on grounds of insufficient active state supervision and remanding for further proceedings relating to Sherman Act compliance and balancing of competing interests under *Midcal Aluminum*].)

prices by producers constituted a clear violation of federal law (*Rice* v. *Alcoholic Bev. etc. Appeals Bd.*, *supra*, 21 Cal.3d 431, 454-456), the court focused its inquiry upon the *effect* of the statutory pricing scheme rather than its form reasoning that former section 24755 "has the effect not only of allowing illegal vertical restraints on competition—i.e., resale prices specified by producers and imposed upon retailers—but horizontal restraints as well." (*Id.*, at p. 454.) In view of the statistical evidence there presented reflecting a gradual and marked reduction in price differentials among liquors of the same type, the court determined that the statute clearly violated Sherman Act policy reasoning in part: "However, that there may be some interbrand competion does not detract from the circumstance that among leading brands there is a uniformity of price which persuasively demonstrates the absence of 'free and unfettered competition' in the California liquor industry. Indeed, the posting system facilitates price fixing among producers. While it may be a per se violation of the Sherman Act for competitors to exchange price information on a regular basis (*United States* v. *Container Corp.* (1969) 393 U.S. 333, 336-337 [21 L.Ed.2d 526, 529-530, 89 S.Ct. 510]), producers may readily determine the prices charged by their competitors by referring to the prices filed with the department or to industry publications listing the posted prices. (Cal. Admin. Code, tit. 4, § 99.2, subd. (b)(2).)" (*Rice* v. *Alcoholic Bev. etc. Appeals Bd.*, *supra*, 21 Cal.3d at pp. 455-456.)

Thus, contrary to respondents' assertion that the *Rice* analysis is limited to vertical price fixing arrangements alone, the court underscored the anticompetitive *effect* resulting from the posting system's facilitation of price fixing among producers as an impermissible restraint of trade in violation of Sherman Act policy.[7]

Under the challenged statute, licensed wholesalers are required to announce their prices in advance by posting them with the Department and, under sanction of penalty, are prevented from making sales to retailers at different prices. Although in form a price posting regulation, it is not immune from antitrust analysis under *Rice* in order to determine whether an illegal price fixing restraint is otherwise manifested. Here, as in *Rice*, petitioner introduced statistical evidence demonstrating a progressive elimination of price variations between wholesalers selling the same brand

---

[7]Respondents' parallel argument, relying on *Ralphs Grocery Co.* v. *Reimel* (1968) 69 Cal.2d 172 [70 Cal.Rptr. 407, 444 P.2d 79]), that *Rice* posting is inherently distinguishable from price fixing is unpersuasive. First, as discussed, the mere definitive distinction does not eliminate the possibility that price posting legislation may in fact facilitate illegal price fixing. Secondly, *Ralphs Grocery*, decided before the repeal of the Miller-Tydings Act and McGuire Act, is of limited precedential significance in light of the subsequent *Rice* holding.

and competing brands.[8] Moreover, as the Board concluded, subdivision (f) of the implementing rule literally "invites periodic examination of the price lists on file" thus assuring other competitors that the filing licensee will not sell its products to anyone at a lower price. In plain effect, the mandated price posting, coupled with the regulatory compliance condition, openly sanctions and promotes an exchange of price information among competitors calculated to produce a uniform price structure vividly demonstrating the absence of free and unfettered competition in the wholesale liquor industry. (See *Rice* v. *Alcoholic Bev. etc. Appeals Bd.,* *supra,* 21 Cal.3d at pp. 455-456.) The pernicious effect of the statutory scheme in promoting horizontal price restraints is the same whether applied to wholesale or retail price maintenance provisions; price fixing at either level is violative of the Sherman Act. (See *Midcal Aluminum, Inc., supra,* 90 Cal.App.3d at p. 983.)[9]

Accordingly, we conclude that section 24756 suffers from the same infirmity as the wholesale price posting requirements examined in *Midcal.* Consequently, the price posting statute must be declared invalid as an illegal restraint of trade in the absence of state action exemption or constitutional protection.

Whether antitrust immunity is conferred on the price posting scheme under the doctrine of *Parker* v. *Brown, supra,* 317 U.S. 341, rests upon a determination of compliance with governing standards: first, the challenged restraint must be clearly articulated and affirmatively expressed as state policy; second, the policy must be "actively supervised" by the state itself. (*California Liquor Dealers* v. *Midcal Aluminum, supra,* 445

---

[8]For *inter*brand competition, in 1955, per case prices of the leading gins varied $2.71 per case or approximately 7 percent. In 1975, the difference per case between the highest and lowest leading gin was a single cent. During that same period the case price of bourbons, excluding Ten High, narrowed from $13.47 (14 percent) variance to $.47 (1 percent). The leading scotch whiskeys went from a $.50 per case variance equal to 9/10 percent to $.29 per case variance or 3/10 percent.

For *intra*brand competition, with one exception, every wholesaler who sold one of the leading brands of gin, scotch whiskey or straight whiskey charged the same per case price as his competitors.

Additionally, during the fifteen-month period prior to the hearing, there were only two instances where the price of one of the analyzed brands was reduced: In November and December 1979, John Walker Red and Gordon's Gin were reduced in price; during those two months every wholesaler in Northern California who handled that brand made the exact same price reduction. The following January, each increased his price to the same amount charged by their competitors.

[9]We agree with the Board's determination that the semantical distinction between a "price schedule" and "price list" noted in *Midcal,* 90 Cal.App.3d at p. 985, is dictum at best. However labeled, it is the price posting system that facilitates illegal price fixing that is central to our inquiry. (*Rice* v. *Alcoholic Bev. etc. Appeals Bd., supra,* 21 Cal.3d at p. 455.) Additionally, we observe that the Department itself equates the statutory term with "price schedules," the designation consistently employed in the implementing rule.

U.S. 97, 105 [63 L.Ed.2d 233, 243].) Assuming arguendo that the statutory scheme unmistakably evidences a clear legislative policy sanctioning wholesale price maintenance in satisfaction of the first prong, no similar compliance with the second prong requiring active state involvement is demonstrated. The observations of our highest federal court in its critique of a parallel California statute is aptly instructive: "[T]he State simply authorizes price-setting and enforces the prices established by private parties. The State neither establishes prices nor reviews the reasonableness of the price schedules; nor does it regulate the terms of fair trade contracts. The State does not monitor market conditions or engage in any 'pointed reexamination' of the program. The national policy in favor of competition cannot be thwarted by casting such a gauzy cloak of state involvement over what is essentially a private price fixing arrangement." (*Id.*, 445 U.S. at pp. 105-106 [63 L.Ed.2d at p. 243]; see also *Rice* v. *Alcoholic Bev. etc. Appeals Bd., supra,* 21 Cal.3d 431, 445, fn. omitted.)

As petitioner correctly argues, active state involvement is as absent here as it was under the resale price maintenance program invalidated in *Rice.* Under both statutory programs, as the Board found, the state neither established its own pricing scheme nor reviewed the reasonableness of the prices set by others. The state merely provides, at public expense, a facility for the exchange of wholesale price information among competitors resulting in a uniform price structure, a practice which stifles rather than promotes free competition. In the absence of active supervision or "pointed reexamination" by the state itself to insure that Sherman Act policies are not unnecessarily subordinated (*Rice* v. *Alcoholic Bev. etc. Appeals Bd., supra,* 21 Cal.3d 431, 445), no antitrust immunity is extended. Nor do we comprehend the Department's insistent claim that it is the individual wholesaler who sets his own prices rather than the state or others. It is the very existence of an essentially private price fixing arrangement under statutory sanction which is repugnant to Sherman Act policies. As long declared: "a state does not give immunity to those who violate the Sherman Act by authorizing them to violate it, or by declaring that their action is lawful . . . .'" (*California Liquor Dealers* v. *Midcal Aluminum, supra,* 445 U.S. 97, 104, 106 [63 L.Ed.2d 233, 242, 243-244] [quoting *Parker* v. *Brown, supra,* 317 U.S. at p. 351 (87 L.Ed. at p. 326)].)

 We next consider whether section 2 of the Twenty-first Amendment of the United States Consitution[10] insulates the challenged statute from Sherman Act compliance, a contention rejected by the Board for the reasons stated in *Rice* and *Midcal.* We are similarly persuaded.

[10]Section 2 provides: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

Whether the statutory scheme may be sustained under the protection of the Twenty-first Amendment requires a balancing process in order to determine what policies are furthered by the statute, whether the price posting provisions clearly vindicate those policies, and whether and to what degree the Sherman Act policy is undermined by that statutory program. (*Rice* v. *Alcoholic Bev. etc. Appeals Bd.*, *supra*, 21 Cal.3d at p. 451.) Although the amendment grants to states virtually complete control in regulating the sale of liquor and structuring a liquor distribution system, such control is not absolute and remains subject to overriding federal interest in the regulation of interstate commerce. ''The competing state and federal interests can be reconciled only after careful scrutiny of those concerns in a 'concrete case.' [Citation.]'' (*California Liquor Dealers* v. *Midcal Aluminum, supra,* 445 U.S. 97, 110 [63 L.Ed.2d 233, 246].) We believe that the *Rice* rationale relating to the state's interest in retail price maintenance provisions is equally applicable and controlling in the context of a wholesale price posting program. Both sections were enacted as a part of chapter 10 of the Alcoholic Beverage Control Act for the same legislative purposes: to promote temperance and orderly marketing conditions (§§ 24749, 23001; *Rice* v. *Alcoholic Bev. etc. Appeals Bd.*, *supra,* 21 Cal.3d at p. 451.)[11]

By analogy to *Rice* we similarly find no compelling justification for the horizontal restraints created by the wholesale price posting statute which tend to eliminate free competition. There is no showing that price posting actually protects small retailers. Indeed, the studies considered in *Rice* suggest that price posting provides the small retailer with little protection, if any, from discriminatory pricing practices at the wholesale level. Conversely, there is no reason to assume that price posting is necessary to the effective policing of discriminatory price practices under the provisions of the Robinson-Patman Act. As earlier discussed, there is eloquent proof that price posting actually results in serious impairment of price competition in the wholesale liquor industry. While it is arguable that price posting may provide useful information to the consumer retailer who might

---

[11]We reject respondents' contention that the challenged statute was enacted to prevent price discrimination proscribed by section 25503, subdivision (e), thus justifying the anticompetitive effect of the price posting program. The price discrimination measure, enacted after section 24756, is found in an entirely different chapter (15) of the Alcoholic Beverage Control Act for the wholly different purpose of maintaining the independence of the tripartite levels of distribution provided under the act. (See *California Beer Wholesalers Assn., Inc.* v. *Alcoholic Bev. etc. Appeals Bd.* (1971) 5 Cal.3d 402, 407-412 [96 Cal.Rptr. 297, 487 P.2d 745].) Nor do we find the holding in *Schenley Affiliated Brands Corp.* v. *Kirby* (1971) 21 Cal.App.3d 177 [98 Cal.Rptr. 609], applicable as contended. *Schenley,* which then assumed the validity of price fixing legislation, dealt with an earlier version of rule 100 concerning the types of permitted assortments by wholesalers and the prohibition of "tie-in" sales for discount purposes; there is no suggestion in *Schenley* that section 24756 was intended either to implement or supplant section 25503.

otherwise be subject to predatory practices, it seems clear that it is only in a noncompetitive setting that the protection of wholesale price posting would even be required. Ironically, it is the price posting scheme *itself* which tends to create a noncompetitive environment which would conceivably justify whatever protection is afforded the retailer through such accessible information. In convoluted result, the price posting statute provides a remedy for an ailment which it itself creates.

Finally, it is doubtful whether the small retailer would gain any competitive advantage through the posting of quantity discounts which as a practical matter would be available only to larger retailers. Nor does the circumstance that the narrowing of prices to lower levels thus minimizing the burden imposed upon retailers justify the anticompetitive effect of price posting. To reiterate, the major economic premise underlying the Sherman Act is the promotion of free competition; any restraint on trade which *raises, lowers or stabilizes prices,* is prohibited. (*U.S.* v. *Socony-Vacuum Oil Co.* (1940) 310 U.S. 150, 222 [84 L.Ed. 1129, 1167-1168, 60 S.Ct. 811].)

Nor is it reasonable to conclude that the wholesale price posting program is likely to promote temperance. (See *Rice* v. *Alcoholic Bev. etc. Appeals Bd., supra,* 21 Cal.3d 431, pp. 457-459.) Again, it is conjectural at best whether the anticompetitive effect of price posting would trigger higher wholesale prices and consequent higher retail prices so as to cause a perceptible decrease in consumption demands. As *Rice* teaches, there is little evidence to suggest that price maintenance legislation significantly contributes to reduced consumption of alcohol. (*Id.,* at p. 457.) Such doubtful benefit is inadequate to override the significant objectives of the Sherman Act (*California Liquor Dealers* v. *Midcal Aluminum, supra,* 445 U.S. 97, 114 [63 L.Ed.2d 233, 248-249]; *Rice, supra,* 21 Cal.3d p. 458).

Moreover, alternative means to accommodate state concerns compatible with the objectives of the Sherman Act could be readily fashioned. Obviously, the establishment of a truly competitive market, permitting access to retailers of independent wholesale prices, would enable purchases at the best possible price. Additionally, a more limited exchange of presale price information among wholesalers arguably would result in minimal anticompetitive effects within the industry while providing wholesalers and retailers with adequate price information without risk of predatory price practices. Such limited exchange in order to further adherence to the Robinson-Patman Act would appear consonant with Sherman Act precepts. (See e.g., *Wall Products Co.* v. *National Gypsum Co.* (N.D.Cal. 1971) 326 F.Supp. 295 [permissible price *verification* among gypsum manufacturers]; but see *United States* v. *United States Gypsum Co.* (1978) 438 U.S.

422 [57 L.Ed.2d 854, 98 S.Ct. 2864], which substantially restricts such limited price exchange practice.)

In conclusion, we hold that consideration of relevant balancing factors compels a determination that the policies underlying the Sherman Act are paramount and that the price posting scheme embodied in section 24756 and the implementing rule are invalid. (*California Liquor Dealers* v. *Midcal Aluminum, supra,* 445 U.S. 97, 114 [63 L.Ed.2d 233, 248-249]; *Rice* v. *Alcoholic Bev. etc. Appeals Bd., supra,* 21 Cal.3d 431, p. 459.)

In view of our determination, we need not reach the remaining issues raised in the briefs.[12]

The order of the Board below is annulled. The petitions to intervene as real parties are dismissed.

Elkington, J., and Newsom, J., concurred.

Petitions for a rehearing were denied November 18, 1982, and the opinion was modified to read as printed above. The petition of respondent and real party in interest for a hearing by the Supreme Court was denied February 3, 1983.

---

[12]While it is unnecessary to discuss the question of the Board's authority to declare the subject statute unenforceable by reason of the restrictions imposed under California Constitution, article III, section 3.5, we assume, arguendo, that the explicit constitutional language would prohibit such an administrative adjudication as determined below. However, we agree with the Board that, as a general proposition, such prohibition on constitutional grounds would not affect an administrative agency's power in the enforcement of its own rules. (See *Goldin* v. *Public Utilities Commission* (1979) 23 Cal.3d 638, 669, fn. 18 [153 Cal.Rptr. 802, 592 P.2d 289].)