Elsie Viola **MILLER** and Oretta Bernice Lancaster, doing business as the Junction Cafe and Tavern; Taylor's Coffee Shop, Inc., dba Rennie's Landing; Wian, Inc., dba Barney's Cable; individually and as representatives of others similarly situated; Plaintiffs;

v.

William H. **HEDLUND**, Sylvia S. Bedingfield, Reuden A. Worster, Stan Auderkirk, and Jill Thorne, individually in their representative capacities as the Commissioners of the Oregon Liquor Control Commission; C. Dean Smith, individually in his capacity as Administrator for the Oregon Liquor Control Commission; Oregon Beer and Wine Distributors Association, Inc.; Spear Beverage Co., Inc.; Coast Distributors, Inc.; and United Beer Distributing Company; individually and as representatives of others similarly situated; Defendants.

Civ. No. 78–259–FR.

United States District Court,
D. Oregon.

Jan. 24, 1984.

Dave Frohnmayer, Atty. Gen., John R. McCulloch, Jr., Chief Trial Counsel, Robert W. Muir, Asst. Atty. Gen., Salem, Or., for state defendants.

Garry P. McMurry, Peter R. Mersereau, Ronald L. Wade, Rankin, McMurry, VavRosky & Doherty, Portland, Or., for private defendants.

David Axelrod, Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, Or., for plaintiffs.

OPINION AND ORDER

FRYE, District Judge:

The matters before the court are plaintiffs' motion for summary judgment, state defendants' motion for summary judgment, and private defendants' motion for summary judgment.

This case involves an antitrust challenge to certain regulations promulgated by the Oregon Liquor Control Commission (OLCC). The regulations place limitations on the manner in which liquor wholesalers may sell wine and beer to retail customers. Plaintiffs are establishments that purchase beer and wine from wholesalers and sell beer and wine at retail. One group of defendants is composed of the Commissioners of the OLCC (the state defendants), another of beer and wine wholesalers (the private defendants). Plaintiffs allege that the regulations have the effect of stabilizing and maintaining the prices of beer and wine in the State of Oregon. Plaintiffs have moved for summary judgment, seeking declaratory and injunctive relief restraining the state defendants from enforcing the regulations at issue. The state and private defendants also have filed motions for summary judgment.

The challenged regulations require beer and wine wholesalers to do several things. Under OAR 845–10–210(1)(a), wholesalers must file with the OLCC a written schedule of prices at which they will sell beer at wholesale within the state. These prices must be uniform within classes of trade buyers. The prices must be for delivered product; that is, the wholesale price to a given customer is constant without regard to transportation considerations. Quantity discounts are prohibited. Under paragraph (c) of this regulation, prices so posted become effective ten days after receipt by the OLCC, unless rejected by the OLCC under paragraph (b). Prices may not be changed except in accordance with OLCC rules. Under paragraph (d), if a price filing re-

flects a decrease in price, the posting, and hence the price, must remain in effect for 90 days, unless the OLCC, in its discretion, waives the 90-day period for certain reasons set out in the regulation. OAR 845–10–210(2) sets up similar restrictions for the wholesale distribution of wine, except that the "post-off" period—i.e., the period of time for which a decrease in price must remain posted—is 30 days rather than 90 days.

In their motion for summary judgment plaintiffs seek an injunction restraining enforcement of these regulations on the ground that they are void by reason of their conflict with and preemption by the Sherman Act, 15 U.S.C. § 1, pursuant to the Supremacy Clause of the United States Constitution. The state defendants seek summary judgment on the grounds that (1) the regulations are valid regulations of interstate commerce under the 21st amendment to the United States Constitution; (2) the regulations constitute "state action" which is immune from the Sherman Act under *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), and (3) the state defendants have not engaged in a combination, conspiracy, or agreement in restraint of trade, and the regulations do not require or authorize such a combination on the part of private parties. The private defendants seek summary judgment based on the absence of any showing by the private defendants to restrain trade.

The parties are in agreement that the issues present questions of law appropriate for resolution on a motion for summary judgment.

## ARE THE REGULATIONS PREEMPTED BY THE SHERMAN ACT?

In order to prevail, plaintiffs must show that the regulations are preempted by the Sherman Act. In *Rice v. Norman Williams Co.*, 458 U.S. 654, 102 S.Ct. 3294, 73 L.Ed.2d 1042 (1982), the Supreme Court indicated that state regulatory schemes are only preempted by the Sherman Act in those cases where compliance with the scheme necessarily leads to an antitrust violation:

In determining whether the Sherman Act preempts a state statute, we apply principles similar to those which we employ in considering whether any state statute is preempted by a federal statute pursuant to the Supremacy Clause. As in the typical preemption case, the inquiry is whether there exists an irreconcilable conflict between the federal and state regulatory schemes. The existence of a hypothetical or potential conflict is insufficient to warrant the preemption of the state statute. A state regulatory scheme is not preempted by the federal antitrust laws simply because in a hypothetical situation a private party's compliance with the statute might cause him to violate the antitrust laws. A state statute is not preempted by the federal antitrust laws simply because the state scheme might have an anticompetitive effect.

A party may successfully enjoin the enforcement of a state statute only if the statute on its face irreconcilably conflicts with federal antitrust policy. In *California Liquor Dealers v. Midcal Aluminum, Inc.*, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980), we examined a statute that *required* members of the California wine industry to file fair trade contracts or price schedules with the State, and provided that if a wine producer had not set prices through a fair trade contract, wholesalers *must* post a resale price schedule for that producer's brands. We held that the statute facially conflicted with the Sherman Act because it *mandated* resale price maintenance, an activity that has long been regarded as a *per se* violation of the Sherman Act.

By contrast, in *Seagram & Sons v. Hostetter*, [384 U.S. 35, 86 S.Ct. 1254, 16 L.Ed.2d 336 (1966)], we rejected a facial attack upon § 9 of New York's Alcoholic Beverage Control Law, which required retailers and wholesalers to file monthly price schedules with the State Liquor Authority accompanied by an affirmation that the prices charged were no higher

than the lowest price at which sales were made anywhere in the United States during the preceding month. *Id.* 384 U.S. at 39–40, 86 S.Ct., at 1257–1258. The Court found no clear repugnancy between § 9 and the federal antitrust laws. . . .

Our decisions in this area instruct us, therefore, that a state statute, when considered in the abstract, may be condemned under the antitrust laws only if it mandates or authorizes conduct that necessarily constitutes a violation of the antitrust laws in all cases, or if it places irresistible pressure on a private party to violate the antitrust laws in order to comply with the statute. Such condemnation will follow under § 1 of the Sherman Act when the conduct contemplated by the statute is in all cases a *per se* violation. If the activity addressed by the statute does not fall into that category, and therefore must be analyzed under the rule of reason, the statute cannot be condemned in the abstract.

*Id.* at 3299–3300 (citations, footnotes omitted).

The plaintiffs argue that the challenged regulations require behavior that is a *per se* violation of the Sherman Act. *See The Sugar Institute, Inc. v. United States,* 297 U.S. 553, 56 S.Ct. 629, 80 L.Ed. 859 (1936) (price posting plus agreement to adhere to posted prices); *see Federal Trade Commission v. Cement Institute,* 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1010 (1948) (quoting only delivered prices); *see United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940) (post-off provisions). The state defendants argue that section 1 of the Sherman Act only reaches contracts, combinations, or conspiracies that restrain trade; and hence, that the regulations do not necessarily lead to an antitrust violation unless they require some inter-wholesaler agreement. Because the regulations only require unilateral wholesaler conduct and because the regulations neither compel nor authorize inter-

wholesaler agreements to restrain trade, the regulations are not subject to preemption.

Defendants rely primarily upon *Enrico's, Inc. v. Rice,* 551 F.Supp. 511 (N.D.Cal. 1982), *Serlin Wine and Spirit Merchants, Inc. v. Healy,* 512 F.Supp. 936 (D.Conn. 1981), *aff'd sub nom. Morgan v. Division of Liquor Control,* 664 F.2d 353 (2nd Cir. 1981), and *United States Brewers Association v. Healy,* 532 F.Supp. 1312 (D.Conn. 1982), *rev'd on other grounds* 692 F.2d 275 (2nd Cir.1982). *Enrico's* involves 4 Cal.Admin.Code § 100, which *inter alia* requires wholesalers of distilled spirits to post prices and to adhere to the posted prices for at least a month, and which allows quantity discounts only according to a regulatory formula. The court in *Enrico's* held that these regulations were not preempted by the Sherman Act because of the lack of any requirement or authorization in the regulations of inter-wholesaler agreements. The court specifically rejected the argument made in the present case by plaintiffs that the regulations themselves constitute the required agreement or combination. 551 F.Supp. at 513. The *Enrico's* court also specifically rejected the reasoning of *Lewis-Westco & Co. v. Alcoholic Beverage Control Appeals Board,* 136 Cal. App.3d 829, 186 Cal.Rptr. 552 (1982), *cert. denied* —— U.S. ——, 104 S.Ct. 193, 78 L.Ed.2d 170 (1983), relied upon by plaintiffs and discussed below. *Serlin v. Healy, supra,* deals with similar Connecticut regulations requiring manufacturers and out-of-state shippers to post prices for the next month, and further requiring wholesalers and retailers to sell for no less than a "cost" figure determined by the regulations according to a formula from this initial price posting. Both the district court and the Second Circuit found the regulations immune from antitrust preemption because the statutory scheme "[does] not authorize or compel private parties to enter contracts or combinations to fix prices in violation of § 1 of the Sherman Act." *Morgan supra,* 664 F.2d at 355.[1] Finally,

---

1. These courts also held that the State of Connecticut was entitled to *Parker* immunity for the regulations.

*United States Brewers Association v. Healy, supra,* deals with a number of Connecticut regulations, including price posting requirements, discount prohibitions, prohibitions on discriminating between customers, minimum mark-up requirements, and mandated exclusive territories. Again, finding that the regulations did not compel or authorize any agreement between private parties, the court held that they were not preempted by the Sherman Act.

■ Plaintiffs place primary reliance on *Lewis-Westco, supra.* There, the California Court of Appeals struck down certain California regulations as preempted by the Sherman Act. The regulations required manufacturers, rectifiers, and wholesalers to post prices and to sell only at the posted prices. The appeals court felt that its ruling was compelled by the California Supreme Court's earlier decision in *Rice v. Alcoholic Beverage Control Appeals Board,* 21 Cal.3d 431, 146 Cal.Rptr. 585, 579 P.2d 476 (1978), and its own earlier decision in *Midcal Aluminum v. Rice,* 90 Cal.App.3d 979, 153 Cal.Rptr. 757 (1979), *aff'd sub nom. California Liquor Dealers v. Midcal Aluminum,* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980). However, the *Rice* and *Midcal* cases deal with regulations that require all sellers at a given distribution level to sell at least at a minimum price (*Rice*) or at a price set by producers themselves (*Midcal*). Because this scheme effectively forced all sellers on a given distribution level to sell at one set price, the *Rice* and *Midcal* courts had little difficulty finding that the regulations mandated price fixing, which clearly constitutes a *per se* violation of the Sherman Act. The California courts had no need to address the "unilateral action" argument made by the state defendants here because the regulations at issue in the California cases mandated multilateral compliance with a price-setting scheme. In *Lewis-Westco,* the court did not directly address the unilateral action argument, although it clearly recognized the important unilateral v. multilateral distinction in the regulations before it as opposed to the regulations at issue in *Rice* and *Midcal.* The *Lewis-Westco* court reasoned that because the price posting regulations had the *effect* of stabilizing prices, the regulations were subject to preemption. However, this analysis seems to ignore the teachings of *Rice v. Norman Williams, supra,* that a statutory scheme "is not preempted by the federal antitrust laws simply because the state scheme might have an anticompetitive *effect.*" 102 S.Ct. at 3299 (emphasis added). It is only a *per se* violation of the Sherman Act if a *combination* exists for the purpose and with the effect of stabilizing prices. Because the price posting statute requires only unilateral wholesaler action, the necessary element of agreement is lacking, and hence the Oregon price posting scheme does not authorize or mandate conduct that necessarily constitutes a violation of the antitrust laws. As such, the regulations are not subject to preemption.[2]

---

**2.** At first glance, another case upon which plaintiffs rely, *Knudsen Corp. v. Nevada State Dairy Commission,* 676 F.2d 374 (9th Cir.1982), appears more troublesome to defendants' position. There, the Ninth Circuit upheld a district court's injunction against certain Nevada regulations over dairy product pricing. Under the Nevada scheme, a dairy producer must file lists of wholesale, retail, and distributor prices, which do not become effective until seven days after filing. The filed prices are made public, and sales cannot be made below the filed price, or below cost. The standard of review used in the case was whether the district court abused its discretion in enjoining enforcement of the regulations; the Ninth Circuit did not consider the legal issues involved *de novo.* However, the court seemed to indicate that if the effect of the regulations was to lessen price competition,

then they could be enjoined. The impact of this ruling is uncertain. On the one hand, the court did not say that the effect of the regulations was a *per se* violation of the Sherman Act; rather, a hearing on the merits was required to determine whether in fact the regulations had an anticompetitive effect. (This appears to indicate that, even were *Knudsen* considered controlling, plaintiffs would not be entitled to summary judgment at this time.) On the other hand, the court cited no cases in support of the proposition that effect is sufficient, and could not have relied on *Rice v. Norman Williams, supra,* because *Rice* was decided after the *Knudsen* decision was handed down. This fact, plus the fact that the *Knudsen* court was reviewing on an "abuse of discretion" standard, and the differences between the regulations at issue there and in the present case, limits the authori-

This result is a common sense result. The purpose of the Sherman Act is to restrain businesses from agreeing, conspiring, or combining for the purpose of thwarting free market mechanisms. While the regulations at issue in this case do restrict the ability of wholesalers to price their products with absolute freedom, there is no reason why the wholesale price of beer and wine in Oregon should not gravitate down to its most competitive level, absent some sort of *private* agreement to use the regulations for anticompetitive purposes. It may be that beer and wine wholesalers in Oregon do in fact reach express or tacit agreements that involve use of the regulations for the purposes of stabilizing prices. If so, their actions would be in violation of the Sherman Act; but the illegality is a result of their *agreement* to combine for the purpose of restraining trade, and is not mandated or authorized by the regulations themselves.

Thus far the court's opinion relates to the price posting and post-off provisions of the regulations. These provisions are not preempted because as to the essential activity to which they relate—pricing—the provisions do not require inter-wholesaler agreement or concerted action. Each wholesaler is free to set his own prices, without regard to the prices set by other wholesalers. A different situation is presented by the other two provisions, the prohibition against quantity discounts and the delivered price rule.

■ There are limits to the unilateral action argument advanced by the state defendants. Taken to its extreme, the argument would uphold any state regulatory scheme that mandated any private action, because the regulated actors could argue that because there exists no inter-actor agreement or combination, no *per se* violation occurs, and therefore the scheme cannot be preempted. The limit to the argument comes at a point between the price posting/post-off rules on the one hand, and the delivered price/quantity discount rules on the other. Although the former rules do not require wholesalers to act in concert with respect to the prices they set, the latter rules do require all wholesalers to adhere to identical horizontal restraints. By requiring all wholesalers to adhere to the delivered price/quantity discount rules, the State of Oregon forces all wholesalers to agree to abide by these restraints as a condition for continuing to do business, much as was the case in *Midcal.* Thus the element of agreement missing with respect to the price posting/post-off rules is present here. Hence, the delivered price/quantity discount rules may mandate conduct that is a *per se* violation of the Sherman Act. See *Catalano, Inc. v. Target Sales, Inc.,* 446 U.S. 643, 100 S.Ct. 1925, 64 L.Ed.2d 580 (1980).[3]

Because the delivered price/quantity discount rules may mandate conduct constituting a *per se* Sherman Act violation, the court must address the state defendants' contentions that these rules are shielded from the Sherman Act by the *Parker* state action doctrine and section 2 of the Twenty-First Amendment.

The state action issue has arisen previously in this case. Earlier this court dismissed plaintiffs' claims, holding that the regulations at issue were entitled to immunity from the federal antitrust laws under *Parker* and its progeny. This ruling was reversed by the Ninth Circuit in *Miller v. OLCC,* 688 F.2d 1222 (9th Cir.1982). The

---

ty of *Knudsen* for purposes of analysis in the present case.

**3.** This distinction is much less tenuous than appears at first glance. The price posting/post-off rules only require unilateral action from a wholesaler, the setting by the wholesaler of his own price, and adherence to that price. Since all wholesalers must adhere to the prices they individually set, there is an element of agreement mandated by the regulations. Standing alone, however, it is not an antitrust violation for a number of wholesalers to adhere to their own publically-known prices. It is only a violation if the wholesalers adhere to their own publically-known prices and do so with knowledge of the prices of the other wholesalers and with the agreement of other wholesalers that they will adhere to their prices. These elements, however, are neither mandated nor authorized by the price posting/post-off rules.

parties dispute the effect of this ruling on the case in its present posture. Plaintiffs contend that this court is foreclosed from reconsidering the state defendants' state action arguments; defendants contend that the holding in *Miller* was narrower than plaintiffs believe, and that certain statutory changes since the decision in *Miller* make it more likely that the state can now meet the *Midcal* "active supervision" test.

Although the court is hesitant to examine the state action issue again after the Ninth Circuit's decision, the court is uncertain as to whether the opinion covers the case in its present posture. First, *Miller* dealt with all four of the challenged regulations, but the case as it presently stands presents the state action issue only with respect to the quantity discount/delivered price rules. Second, the *Miller* opinion stressed the fact that if the price posting provisions did in fact mandate or authorize conduct violative of the Sherman Act (an issue upon which the court expressly reserved judgment), then *Parker* immunity would be unavailable because the OLCC did not review the reasonableness of the posted prices, as required by *Midcal*. Indeed, a fair reading of the *Miller* opinion indicates that it is concerned with the price posting provisions rather than with the delivered price/quantity discount rules. Third, there is language in the *Miller* opinion itself that might support the view that, as to these remaining rules, state action immunity is available. Finally, certain statutory and administrative changes have occurred in Oregon since the *Miller* opinion which might impact on the question of whether Oregon adequately supervises the regulatory scheme at issue. For all of these reasons, the court will examine whether the quantity discount/delivered price rules are entitled to *Parker* immunity.

*Midcal, supra,* sets out a two-part test for determining whether *Parker* immunity should apply to a state scheme:

> First, the challenged restraint must be "one clearly articulated and affirmatively expressed as state policy"; second, the

policy must be "actively supervised by the state itself."

445 U.S. at 105, 100 S.Ct. at 943, *quoting City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389 at 410, 98 S.Ct. 1123 at 1135, 55 L.Ed.2d 364 (opinion of Brennan, J.). In *Miller,* the Ninth Circuit held that the "active supervision" prong of the test was not met in the present case because

> ... Oregon "neither establishes prices nor reviews the reasonableness of the price schedules ... [nor does it] monitor market conditions or engage in any 'pointed reexamination' of the program." *Midcal, supra,* 445 U.S. at 105–06, 100 S.Ct. at 943. Oregon mandates the posting of prices to be charged by each wholesaler, but does not in any way review the reasonableness of the prices set. While the commission "may reject any price posting which is in violation of any of its rules," Rule 210(1)(b), the effect of that rule is simply to effectuate the price posting and the prohibitions on quantity discounts and transportation allowances. It does not provide for government establishment or review of the prices themselves.... Oregon merely authorizes and enforces the disputed pricing practices. *See Midcal, supra,* 445 U.S. at 105, 100 S.Ct. at 943. It does not " 'displace unfettered business freedom' with its own power." *Id.* at 106 n. 9, 100 S.Ct. at 943 n. 9, *quoting New Motor Vehicle Bd. v. Orrin W. Fox Co., supra,* 439 U.S. 96, at 109, 99 S.Ct. 406 at 411–412, 58 L.Ed.2d 361.

*Miller, supra,* 688 F.2d at 1226–27. Presently at issue, however, are two rules with no explicit pricing function; that is, these rules do not enforce wholesaler-set prices, but rather mandate restraints that make irrelevant factors that would ordinarily influence prices in an unregulated market. It is much less clear how to apply the "active supervision" test to rules such as these.

This court recently examined the *Parker* doctrine in a different factual context. *Llewellyn v. Crothers,* Civ. No. 81–6462FR

(D.Ore. April 20, 1983). There, the court determined that the legal issues inherent in the *Parker* doctrine should be resolved in light of the theoretical basis for the doctrine: the notion of federalism. The *Parker* doctrine exists because

> [W]e find nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature.
>
> .     .     .     .     .
>
> True, a state does not give immunity to those who violate the Sherman Act by authorizing them to violate it, or by declaring that their action is lawful. [Citation omitted] .... Here the state command ... is not rendered unlawful by the Sherman Act since, in view of the latter's words and history, it must be taken as a prohibition of individual and not state action.... [I]t is the state, acting through the Commission, which adopts the program and enforces it ..., in the execution of governmental policy.

*Parker, supra,* 317 U.S. at 351–52, 63 S.Ct. at 313–14.

█ Against the federalism background of the *Parker* decision, the court finds that the delivered price/quantity discount rules fall within the scope of the *Parker* doctrine and are entitled to state action immunity. First, the rules are clearly articulated and affirmatively expressed as state policy. In *Llewellyn, supra,* this court held that

> an action with an anticompetitive effect taken by a state agency will be accorded *Parker* immunity if it can be said that the anticompetitive effect is a necessary or foreseeable result of the agency's execution of a statutory directive or policy. "The antitrust court should require only that the result of an agency's act or decision be of the sort contemplated by state anticompetitive policy." [P. Areeda, *Antitrust Immunity for "State Action" after Lafayette,* 95 Harv.L.Rev. 435 at 453 (1981)].

*Id.* at 14. Here, the rules at issue were promulgated to enforce the statutory prohibitions against financial assistance by wholesalers of liquor to retailers of liquor. ORS 471.415, 471.465. Although the relation between the prohibition against financial assistance and the regulations at issue is said by plaintiffs to be tenuous, the Oregon courts have held that the rules reasonably advance the purposes of the statutes. *Miller v. OLCC,* 42 Or.App. 555, 600 P.2d 954 (1979). More importantly, it is foreseeable that the financial assistance statute may have an anticompetitive effect. Hence, the rules meet the first prong of the *Midcal* test.

As to the second prong—active supervision—the court finds that the rules also meet the test. The importance of the active supervision test has been described in the following way:

> The existence of a state action immunity enables states, like the federal government itself, to define areas inappropriate for market control. Moreover, the adequate supervision criterion ensures that state-federal conflict will be avoided in those areas in which the state has demonstrated its commitment to a program through its exercise of regulatory oversight. At the same time, it guarantees that when the Sherman Act is set aside, private firms are not left to their own devices. Rather, immunity will be granted only when the state has substituted its own supervision for the economic constraints of the competitive market.

*Miller, supra,* 688 F.2d at 1225, *quoting* 1 P. Areeda & D. Turner, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 213 at 73 (1978) (footnotes omitted). Here, active state supervision exists because the rules at issue were promulgated by the state agency itself, and imposed on wholesalers and retailers. This is not a case where the state merely authorizes private anticompetitive action or declares private anticompetitive actions to be lawful. The regulations at issue do not authorize private parties to agree upon and effectuate non-price horizontal restraints; rather, the restraints are imposed upon the private parties by the state. Finally, since the decision in *Miller,* Oregon has enacted

comprehensive legislation requiring periodic review by all state agencies of the economic effect of their regulations. ORS 183.545, 183.550. The OLCC is currently scheduled to review the regulations at issue in the summer of 1984. This is the sort of monitoring of market conditions and "pointed reexamination" of the program required to meet the active supervision test.

With respect to the plaintiffs' motion for injunctive and declaratory relief, the court holds that (1) the price posting and post-off rules are not subject to preemption by the Sherman Act because they do not mandate or authorize conduct constituting a *per se* antitrust violation, and (2) insofar as the delivered price/quantity discount rules may mandate or authorize such a *per se* violation, they are nevertheless entitled to immunity under the *Parker* doctrine. The plaintiffs' motion for summary judgment is therefore denied, and the state defendants' cross motion for summary judgment is granted.

The remaining issue is the private defendants' motion for summary judgment on the grounds "that there are no genuine issues of matrial [sic] facts concerning the absence of any concerted activity by these moving defendants." Private Defendants' Cross-Motion for Summary Judgment at 2. As stated earlier, it is possible that, although the regulations at issue do not mandate or authorize any inter-wholesaler combinations, wholesalers nevertheless do *in fact* use the regulations for anticompetitive purposes. In their motion, the private defendants contend that plaintiffs have submitted no evidence of any inter-wholesaler combination except (1) a summary of wholesale prices for Miller and Budweiser beer and (2) an affidavit of Albert Usher stating that in his opinion the price posting rules cause price uniformity.

Because the parties (and particularly the plaintiffs) have expended great effort on the preemption issue and very little effort on this issue, the court declines to rule on the private defendants' motion for summary judgment. Instead, it is ordered that plaintiffs' file within 20 days of the date of this order a memorandum of law and supporting materials specifically addressing the private defendants' motion. The private defendants shall within 15 days thereafter respond, at which time the court will decide the issue. If the plaintiffs file nothing within 20 days, the court will grant the private defendants' motions.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. Plaintiffs' motion for summary judgment is DENIED.

2. State defendants' motion for summary judgment is GRANTED.

3. Within 20 days of the date of this order plaintiffs shall file a memorandum of law with such supporting materials as they deem necessary and defendants shall respond within 15 days thereafter. The court will thereafter rule on private defendants' motion for summary judgment.