**John T. MORGAN, Stuart J. Filler, Charles A. Heckman, and David S. King, Appellants,**

v.

**DIVISION OF LIQUOR CONTROL, DEPARTMENT OF BUSINESS REGULATION, STATE OF CONNECTICUT, Appellees,**

**Wine & Spirits Wholesalers of Conn., Inc., Connecticut Package Stores Association, Inc., Connecticut Beer Wholesalers, Inc., Intervenors.**

**MOUNTAIN TOP LIQUORS, INC., Clifford Atkin, Permittee; A & P Package Store, David O'Brien, Sr., Permittee; Old Mystic Wine Cellar, Charles P. Hamm, Permittee, Appellants,**

v.

**John F. HEALY, Louis A. Sidoli, David L. Snyder, Charles Kasmer, in their capacity as members or employees of the State of Connecticut and the Division of Liquor Control, Department of Business Regulation, Appellees,**

**Wine & Spirits Wholesalers of Conn., Inc., Connecticut Package Stores Association, Inc., Connecticut Beer Wholesalers, Inc., Intervenors.**

Nos. 140, 141, Dockets 81–7354, 81–7364.

United States Court of Appeals,
Second Circuit.

Argued Oct. 14, 1981.

Decided Nov. 16, 1981.

**354**

John T. Morgan, University of Bridgeport Civ. Clinic, and Alan J. Neigher, Westport, Conn. (Leslie Byelas, Byelas & Neigher, Westport, Conn., James A. Trowbridge, University of Bridgeport Civ. Clinic, Bridgeport, Conn., and Steven Mednick, New Haven, Conn., of counsel), for appellants.

Robert M. Langer, Asst. Atty. Gen., State of Conn., Hartford, Conn., and Richard M. Sheridan, Asst. Atty. Gen., State of Conn., Newington, Conn. (Carl R. Ajello, Atty. Gen., John R. Lacey, Robert F. Vacchelli, Asst. Attys. Gen., State of Conn., Hartford, Conn., of counsel), for appellees.

Daniel E. Brennan, Jr., Brennan, McNamara & Brennan, P.C., Bridgeport, Conn., of counsel, for intervenor Wine & Spirits Wholesalers of Conn., Inc.

Richard Goodman, Trowbridge, Goodman & Rosenthal, Hartford, Conn., of counsel, for intervenor Connecticut Package Stores Ass'n, Inc.

James M. Mannion, Bethel, Conn., of counsel, for intervenor Connecticut Beer Wholesalers, Inc.

Ralph J. Savarese, Washington, D. C. (Ray A. Jacobsen, Jr., John C. Peirce, Howrey & Simon, Washington, D. C., John McCarren, Gen. Counsel, Distilled Spirits Council of the United States, Inc., Washington, D. C., J. Daniel Sagarin, Harrigan, Hurwitz, Sagarin & Rutkin, P. C., Milford, Conn., of counsel), for amicus curiae Distilled Spirits Council of the United States, Inc.

Before KAUFMAN and OAKES, Circuit Judges, and PALMIERI,* District Judge.

IRVING R. KAUFMAN, Circuit Judge:

This is an appeal from a judgment entered upon an order by Judge Daly, granting summary judgment to appellees Division of Liquor Control of the Department of Business Regulation, State of Connecticut, and employees of the Division, in an anti-trust action brought by appellants John T. Morgan, and others, consumers of alcoholic

---

* Of the United States District Court for the Southern District of New York, sitting by designation.

beverages in Connecticut, and Mountain Top Liquors, Inc., and others, Connecticut retailers of alcoholic beverages. We affirm essentially on the grounds stated in Judge Daly's well-reasoned opinion of April 15, 1981, *Serlin Wine & Spirits Merchants, Inc. v. Healy*, 512 F.Supp. 936 (D.Conn.1981).

To fully understand the grounds for our conclusions we add the following: For more than two decades, Connecticut has regulated the price of alcoholic beverages by statutes that establish the method by which the manufacturer, the wholesaler, and the retailer set their prices. Each manufacturer or out-of-state shipper of alcohol must file, with the Division of Liquor Control, a monthly list of prices at which it will sell its products to Connecticut wholesalers during the month following. Conn.Gen.Stat. § 30–63 (1977). Each wholesaler is required to file a monthly list of the prices at which it will sell its beverages to Connecticut retailers. *Id.*

The statute also provides that the prices listed cannot be less than a wholesaler's "cost." This term is defined to include factors such as actual cost, transportation charges, insurance and a minimum markup of 11% on hard liquor, 20% on beer, 20% on wine not bottled in Connecticut, and 36% on wine bottled in Connecticut. Conn.Gen. Stat. §§ 30–68, 30–68e, 30–68j (1977). Retailers are not permitted to charge below their "cost," which is defined as the retailer's "bottle price" plus a markup of 21.5% on spirits, 28% on cordials, 23% on beer, and 33.3% on wine. Conn.Gen.Stat. §§ 30–68b, 30–68j (1977).[1]

In June, 1980 appellants independently instituted actions in the district court of Connecticut. They requested injunctive relief and a declaratory judgment that the pricing provisions promulgated and enforced by the State violated § 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 (1976). They asserted that the effect of the

statutes was to deny price competition among wholesalers and retailers of alcoholic beverages in Connecticut. After the cases were consolidated, Judge Daly granted appellees' motion for summary judgment.

The appellants place heavy reliance on *California Retail Liquor Dealers Ass'n v. Midcal Aluminum*, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980). We fully agree with Judge Daly that the instant case is clearly distinguishable. In *Midcal*, the Supreme Court found that California's wine pricing system constituted resale price maintenance in violation of the Sherman Act. 445 U.S. at 103, 100 S.Ct. at 942. The California statute required producers to fix the minimum prices at which wholesalers could resell the producers' wines. California's involvement was manifested by the requirement that wholesalers and producers set such prices by contract or, in the alternative, that a wholesaler "post" a price for other wholesalers to follow.

In contrast, the State of Connecticut establishes the markup and does not permit private parties to engage in resale price maintenance. The State of Connecticut does not control the initial offering price determined by the manufacturers or out-of-state shipper. Once that price is reported and without any compulsion or participation by the State, the statutory scheme defines the wholesale and retail prices which must be charged. Unlike the California statute in *Midcal*, the Connecticut statutes do not authorize or compel private parties to enter contracts or combinations to fix prices in violation of § 1 of the Sherman Act. *See Fuchs Sugar & Syrups, Inc. v. Amstar Corp.*, 602 F.2d 1025, 1029 (2d Cir.), *cert. denied*, 444 U.S. 917, 100 S.Ct. 232, 62 L.Ed.2d 172 (1979) (to violate the Sherman Act, "the contract, combination or conspiracy must reflect an agreement between independent businessmen.")[2]

---

1. Recently, Connecticut enacted a statute excluding wholesale and retail markups from the set of factors to be used for computing "cost." Public Act No. 81–294 (to take effect for wine on January 1, 1983, and for other products on January 1, 1982).

2. It may appear that the Connecticut system permits beer and wine producers and shippers to establish resale prices. The automatic application of the statutory markup to the initial offering price would seem to allow those who set that price to determine ultimate resale

The question then is whether the State of Connecticut is subject to the antitrust act. *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943) answered that for us by declaring that a State's involvement in a pricing arrangement is immune from the antitrust act because of the state action doctrine. Appellants concede that since the markups are explicitly prescribed in the statutes themselves, they are "clearly articulated and affirmatively expressed as state policy." *California Retail Liquor Dealers Ass'n v. Midcal Aluminum*, *supra*, 445 U.S. at 105, 100 S.Ct. at 943. Furthermore, the policy is "actively supervised" by the State, and the Connecticut legislature has frequently debated the merits of the pricing system. In addition, by structuring a detailed mechanism for determining prices for alcoholic beverages, the State of Connecticut has satisfied the "active supervision" requirement of the state action doctrine. *Id.*

Accordingly, we affirm the judgment of the district court.

---

prices by adjusting their offering price. But this result occurs only because the *State* has dictated the markups, not because any producers or shippers have formed a conspiracy or combination. Moreover, the fierce competitive pressures at the retail level should prevent manufacturers from conspiring to establish prices for alcoholic beverages.