ENRICO'S INC., a California corporation d/b/a "Enrico's Sidewalk Cafe," Plaintiff,

v.

Baxter RICE, Director, Department of Alcoholic Beverage Control, et al., Defendants.

No. C–81–0068 EFL.

United States District Court, N.D. California.

Nov. 24, 1982.

J. Michael Hennigan, Bretz & Hennigan, Beverly Hills, Cal., Mark F. Anderson, Law Offices of Mark F. Anderson, J. Thomas

---

Hannan, Lovitt & Hannan, San Francisco, Cal., for plaintiff.

William T. Chidlaw, Law Offices of William T. Chidlaw, Sacramento, Cal., Carol G. Perry, Lukens, St. Peter & Cooper, San Francisco, Cal., for defendants Wine & Spirit Wholesalers, North and South, and the Rathjen and Juillard Companies.

George Deukmejian, Atty. Gen., of Cal. by Matthew Boyle, Deputy Atty. Gen., San Francisco, Cal., for defendant Baxter Rice.

Dominic J. Campisi, Evans, Latham & Campisi, San Francisco, Cal., for intervenor CBWA, Inc.

Richard R. Patch, Jacobs, Sills & Coblentz, San Francisco, Cal., for defendant House of Sobel.

LYNCH, District Judge.

On cross-motions for summary judgment,[1] this Court confronts the issue of whether the price-posting procedure required by California Business and Professions Code section 24756 and 4 Cal.Admin. Code section 100 (hereinafter collectively referred to as "Rule 100") constitutes a *per se* violation of the Sherman Act, 15 U.S.C. §§ 1 *et seq.* Business and Professions Code section 24756 provides, in relevant part:

> Every distilled spirits ... wholesaler shall file and maintain with the Department [of Alcoholic Beverage Control] a price list showing the prices at which distilled spirits are sold to retailers by the [wholesale] licensee .... Sales of distilled spirits to retailers by each distilled spirits ... wholesaler shall be made in compliance with the price list of the licensee on file with the Department.

Rule 100 provides that each wholesaler who sells or distributes distilled spirits in California must file with the Department of Alcoholic Beverage Control a "written price schedule showing the price per case at which distilled spirits will be sold or distributed, and the discounts offered" by the wholesaler to retailers. 4 Cal.Admin.Code § 100(a). Discounts must be based on quantity and must conform to the formulae set forth in the Rule. 4 Cal.Admin.Code § 100(g). All prices and discounts must be filed at the Sacramento office of the Department by the 15th of the month. On the following day, the filings become publicly available. 4 Cal.Admin.Code § 100(c). It is required that the posted wholesale prices remain in effect for at least a month (4 Cal.Admin.Code § 100(b)), except that a wholesaler has the opportunity to amend its price schedule by *lowering* its price or prices per case or by increasing its quantity discounts to match the lowest submitted price or the highest quantity discount. 4 Cal.Admin.Code § 100(f). Once the posted prices go into effect, the wholesaler is required to sell according to the price schedules or amendments on file with the Department. 4 Cal.Admin.Code § 100(k).

Plaintiff operates a "cafe" which sells distilled spirits in San Francisco, California. Plaintiff has purchased and resold distilled spirits from the wholesaler defendants for over 20 years. Defendants are liquor wholesalers and wine and spirits wholesaler associations. Intervenor, Baxter Rice, is the Director of the California Department of Alcoholic Beverage Control which, pursuant to statute and its own Rule 100, enforces the challenged regulations.

Plaintiff contends that the requirement that the posted wholesale prices cannot be raised for 30 days is "price-fixing" and, thus, a *per se* violation of the Sherman Act. Plaintiffs rely heavily upon *Sugar Institute v. United States,* 297 U.S. 553, 56 S.Ct. 629, 80 L.Ed. 859 (1936), in which the Supreme Court found an agreement among sugar refiners to adhere to their previously announced prices to be a violation of Section 1 of the Sherman Act.

Defendants posit three arguments in support of their contention that Rule 100 is constitutional. First, they argue that no Sherman Act violation results from the Rule due to lack of the required contract, combination or conspiracy among the wholesalers. Second, defendants contend that the Rule is not a clear *per se* violation

---

1. In addition to summary judgment, plaintiff seeks the entry of a permanent injunction.

of the Sherman Act because it is pro-competitive and neither perniciously affects competition nor lacks redeeming virtue. Finally, the wholesalers argue that Rule 100 is a valid exercise of California's power under the Twenty-First Amendment.

Earlier, Judge Conti refused to apply the state action doctrine enunciated in *Parker v. Brown,* 317 U.S. 341, 350–51, 63 S.Ct. 307, 313, 87 L.Ed. 315 (1942) to insulate Rule 100 from the application of the antitrust laws. The Court found that California's involvement in the price-posting program of Rule 100 was insufficient to bring the program within the ambit of the state action doctrine. This conclusion was largely based upon *California Liquor Dealers v. Midcal Aluminum,* 445 U.S. 97, 105, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980). *See* Order Re: Motion for Partial Summary Judgment, August 27, 1981.

*Discussion*

■ This Court finds that Rule 100 does not violate the Sherman Act as it does not mandate conduct which constitutes an antitrust violation. The United States Supreme Court recently stated

> that a state statute, when considered in the abstract, may be condemned under the antitrust laws only if it mandates or authorizes conduct that necessarily constitutes a violation of the antitrust laws in all cases, or if it places irresistible pressure on a private party to comply with the statute.

*Rice v. Norman Williams Co.,* —— U.S. ——, ——, 102 S.Ct. 3294, 3300, 73 L.Ed.2d 1042 (1982). *See also Seagram & Sons v. Hostetter,* 384 U.S. 25, 45–46 (1966). A possible anti-competitive effect alone is insufficient to invalidate a state regulation; the regulation on its face must irreconcilably conflict with federal antitrust policy. *Norman Williams,* at ——, 102 S.Ct. at 3298.

Plaintiff's great reliance on *Sugar Institute* is misplaced. In that case, the members of the Sugar Institute met and collectively agreed to a comprehensive set of restrictions of the sugar industry. The Court found the *agreement* to adhere to previously announced prices and terms of sale to be an antitrust violation. *Sugar Institute,* 297 U.S. at 601–602, 56 S.Ct. at 643. This agreement constituted price fixing, a *per se* violation of Section 1 of the Sherman Act.[2] *Catalano, Inc. v. Target Sales, Inc.,* 446 U.S. 643, 647, 100 S.Ct. 1925, 1927, 64 L.Ed.2d 580 (1980) *(per curiam).*

Plaintiff concedes that the instant situation differs from *Sugar Institute.* Here, no clear agreement in restraint of trade is mandated by Rule 100 and it is each defendant's required unilateral compliance with the Rule which underlies plaintiff's suit.[3] Plaintiff argues, however, that the State of California somehow constitutes the "glue" which creates the required combination for an antitrust violation, seemingly relying upon *California Liquor Dealers v. Midcal Aluminum,* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980).

*Contract, Combination or Conspiracy*

■ A violation of Section 1 of the Sherman Act cannot be based on unilateral action. *United States v. Colgate & Co.,* 250 U.S. 300, 305–6, 39 S.Ct. 465, 467, 63 L.Ed. 992 (1919); Sullivan, *Antitrust,* p. 311 (1977). The section condemns concerted activity only. One court noted that "[i]t is the ability of a private party by contract, combination, or conspiracy to control the price at which another private party can sell a product which the Sherman Act prohibits." *Serlin Wine & Spirit Merchants, Inc. v. Healy,* 512 F.Supp. 936, 939 (D.Conn. 1981), *aff'd sub nom. Morgan v. Division of Liquor Control,* 664 F.2d 353 (2d Cir.1981).

■ In *Morgan,* the Second Circuit considered the validity of a Connecticut liquor pricing statute which, among other things, required each manufacturer to post, on a monthly basis, a list of prices for the following month and which required the manufac-

---

**2.** 15 U.S.C. § 1 states in relevant part: "Every contract, combination ... or conspiracy, in restraint of trade ... is declared to be illegal."

**3.** Failure to comply with the requirements of Rule 100 is grounds for suspension or revocation of a license. 4 Cal.Admin.Code § 1.

turer to adhere to those prices set for that month. The state regulation itself established the minimum markup which wholesalers' and retailers' prices were required to reflect. In addition to finding *Parker v. Brown* immunity for the State of Connecticut due to its great involvement in the price arrangement (664 F.2d at 356), the court noted that "the Connecticut statutes do not authorize or compel private parties to enter contracts or combinations to fix prices in violation of § 1 of the Sherman Act." *Morgan,* 664 F.2d at 335.

Similarly, the court in *United States Brewers Association v. Healy,* 532 F.Supp. 1312 (D.Conn.1982) *rev'd on other grounds,* 692 F.2d 275, 43 Antitrust & Trade Reg. Rep. (BNA) 907 (2d Cir.1982) rejected a challenge to Connecticut's beer price affirmation statute, finding the challenged statute to require only unilateral conduct. The contested Connecticut statute required Connecticut brewers and beer importers to post their prices and to adhere to their prices for a one-month period. The statute further required each brewer selling in Connecticut to affirm that its prices were no higher than the lowest price offered to any wholesaler in the three bordering states. Reiterating that "[a]bsent an agreement among private parties, there cannot be a violation of Section one of the Sherman Act" (532 F.Supp. at 1329), the court found that "the beer affirmation statute requires only unilateral action by each brewer and importer" and that "[i]t does not exert 'irresistible economic pressure' on the plaintiff to violate the Sherman Act." *Healy,* 321 F.Supp. at 1330.

As in the cases discussed above, plaintiff here relies on *Midcal* to support its contention that unilateral compliance with a state statute is sufficient to constitute a Section 1 violation. This reliance, however, is misplaced.

Explaining its *Midcal* decision, the United States Supreme Court recently stated

> In *California Liquor Dealers v. Midcal Aluminum, Inc.,* 445 U.S. 97 [100 S.Ct. 937, 63 L.Ed.2d 233] (1980), we examined a statute that *required* members of the

California wine industry to file fair trade contracts or price schedules with the State, and provided that if a wine producer had not set prices through a fair trade contract, wholesalers *must* post a resale price schedule for that producer's brands. We held that the statute facially conflicted with the Sherman Act because it *mandated* resale price maintenance, an activity that has long been regarded as a *per se* violation of the Sherman Act. *Id.,* at 102–103 [100 S.Ct. at 941–942].

*Rice v. Norman Williams Co.,* ―― U.S. ――, ――, 102 S.Ct. 3294, 3298, 73 L.Ed.2d 1042 (1982) (footnotes omitted) (emphasis in original). The Supreme Court in *Midcal* relied on a long line of cases holding that resale price maintenance is the equivalent of an agreement between wholesalers not to compete. *Midcal,* 445 U.S. at 102, 100 S.Ct. at 941.

Clearly, *Midcal* did not eliminate the requirement of an agreement for a Section 1 violation. Although the case was primarily concerned with whether the California wine pricing program was exempted from antitrust liability under *Parker v. Brown* and whether the Twenty-First Amendment provided the state additional power, the Supreme Court found first that "California's system for wine pricing plainly constitutes resale price maintenance in violation of the Sherman Act. [cites]." *Id.* at 103, 100 S.Ct. at 942. As one court noted

> Invariably, the Supreme Court has viewed resale price maintenance as involving an implicit agreement in those instances where an explicit agreement was not shown.

*United States Brewers Ass'n, Inc. v. Healy,* 532 F.Supp. 1312, 1329 (D.Conn.1982) *rev'd on other grounds,* 692 F.2d 275, 43 Antitrust & Trade Reg.Rep. (BNA) 907 (2d Cir.1982). Further, the statute at issue in *Midcal,* by its own terms, forced an agreement. The statute *required* the wine producers to fix the minimum prices at which wholesalers could sell the producers' wines. The involvement of the state "was manifested by the requirement that wholesalers and producers set such prices by contract or, in the

alternative, that a wholesaler 'post' a price for other wholesalers to follow." *Morgan,* 664 F.2d at 355.

Instead, Rule 100 mandates only unilateral action by each liquor wholesaler, independent activity insufficient to constitute a Section 1 violation. Further, Rule 100 cannot be construed as constituting resale price maintenance since it only requires the liquor wholesalers themselves to adhere to the prices they file.

Shortly before this Court was to have issued its opinion in this case and after the opinion was drafted, the California Court of Appeal for the First District decided *Lewis-Westco & Co. v. Alcoholic Beverage Control Appeals Board,* 136 Cal.App.3d 829, 186 Cal. Rptr. 552 (1982). The California Court of Appeal held Section 24756 of the Business and Professions Code and Rule 100 to be violative of Section 1 of the Sherman Act. In reaching this conclusion, the court relied primarily upon *Rice v. Alcoholic Beverage Control Appeals Board,* 21 Cal.3d 431, 146 Cal.Rptr. 585, 579 P.2d 476 (1978), in which the California Supreme Court invalidated price maintenance provisions which required distilled liquor wholesalers to set minimum retail prices. *Rice,* 21 Cal.3d at 444–459, 146 Cal.Rptr. 585, 579 P.2d 476.

This Court does not find *Rice* to be persuasive since the instant situation, unlike that in *Rice,* does not involve resale price maintenance which would provide evidence of an agreement as required for a Section 1 violation. More on point are the federal cases of *Morgan* and *Healy,* discussed above, which convince this Court that no facial restraint appears from the challenged regulations.

In light of the *Lewis-Westco* decision, this Court requested further briefing and argument from the parties regarding whether this Court's opinion was rendered moot. All parties, except intervenor Baxter Rice, argued strenuously that this Court should issue its opinion. In doing so, the Court notes that the defendants herein were denied the opportunity to intervene in the *Lewis-Westco* case.

Although this decision disposes of the major issues in the action, there remains plaintiff's allegation of private price-fixing. This contention is unrelated to plaintiff's challenge to the facial validity of Rule 100 since plaintiff admits that the statute in no way mandates private price-fixing.

The question of whether Rule 100 is facially invalid due to conflict with Section 1 of the Sherman Act raises, in the opinion of this Court, important antitrust issues. This Court's order clearly involves a controlling question of law as to which there is substantial ground for difference of opinion, as evidenced by the contrary conclusions reached by the California Court of Appeal and this Court. This Court, relying primarily on federal district court and Second Circuit decisions, concluded differently than the state court, which largely relied on state court precedent. This case involves purely federal issues on which this Circuit has yet to speak. Accordingly, this Court finds this order, based upon a single legal issue, to be an ideal candidate for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Since Rule 100 states no *per se* violation of Section 1 of the Sherman Act, summary judgment for the defendants is granted. Since this Court finds no agreement on the part of the defendants, it is unnecessary to reach defendants' other arguments.

IT IS SO ORDERED.