**WINE AND SPIRITS SPECIALTY, INC., Plaintiff-Respondent,**

v.

**Edward D. DANIEL, Director, Department of Public Safety, James A. Franklin, Jr., Supervisor, Division of Liquor Control, Defendants-Appellants,**

**Missouri Wine and Spirits Association, Inc., Intervenor-Defendant-Appellant.**

No. 64984.

Supreme Court of Missouri, En Banc.

March 20, 1984.

Rehearing Denied April 16, 1984.

John Ashcroft, Atty. Gen., Robert E. Dolan, Jr., Warren Weinstein, Asst. Attys. Gen., Jefferson City, for defendants-appellants.

Alex Bartlett, Jefferson City, William B. Schreiber, Michael T. Kelly, New York City, William P. Wright, Jefferson City, for intervenor-defendant-appellant.

Richard E. McFadin, F.A. White, Jr., North Kansas City, Mo., for plaintiff-respondent.

DONNELLY, Judge.

This is an appeal from a declaratory judgment that §§ 311.332, 311.334, 311.336 and 311.338, RSMo 1978, more commonly known as price posting laws, and the analogous regulation of the Department of Liquor Control, 11 C.S.R. 70–2.190, violate the Sherman Act, 15 U.S.C. § 1 et seq. (1976). This Court has exclusive appellate jurisdiction. Mo. Const. art. V, § 3.

The facts are stipulated. The General Assembly has enacted liquor control laws to regulate various phases of the liquor industry. Under these laws manufacturers, wholesalers and retailers are characterized as separate "phases" of liquor traffic requiring separate licenses. Appellants, Director of the Department of Public Safety and Supervisor of the Department of Liquor Control (hereinafter Supervisor), enforce and administer these liquor control laws. The parties acknowledge that while these laws "may at times have the effect of inhibiting price competition, [they] do not compel or authorize wholesalers to agree among themselves for the purpose of contracting, combining or conspiring to fix * * prices."

At trial, respondent, a duly licensed wholesale distributor, sought to enjoin the enforcement of Missouri's price posting laws. Section 311.332 makes it unlawful for any wholesaler to discriminate between retailers or to grant, directly or indirectly, any discount, rebate or free goods except a quantity and payment discount not in excess of one percent apiece. Sections 311.334 and 311.336 require each wholesaler to file monthly a schedule of the prices it intends to charge and the discounts it intends to grant to its retail customers during the upcoming month. The Supervisor then aggregates this information and makes it available for inspection by all wholesalers. Within three days thereafter each wholesaler may reduce (but *not* increase) its prices to meet (but not to go below) lower competing prices and discounts. Section 311.336 additionally empowers the Supervisor to "make such rules and regulations as shall be appropriate to carry out [these laws]." Pursuant thereto the Supervisor promulgated 11 C.S.R. 70–2.190 to effectuate these provisions. Section 311.338 provides that if a wholesaler violates any of the aforementioned provisions, its license will be either suspended for not less than fifteen days or revoked.

The trial court found these laws: (1) are *per se* illegal as constituting resale price maintenance, price fixing and a restraint of trade, (2) authorize or compel conduct violative of the Sherman Act, and (3) place irresistible pressure on private parties to violate the Sherman Act. We disagree.

The Sherman Act makes illegal:

Every contract, combination * * * or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations * * *.

15 U.S.C. § 1 (1976). In *Rice v. Norman Williams Co.*, 458 U.S. 654, 102 S.Ct. 3294, 73 L.Ed.2d 1042 (1982), the Supreme Court articulated the test to be used on this appeal:

A party may successfully enjoin the enforcement of a state statute only if the statute on its face irreconcilably conflicts with federal antitrust policy. * * *

[A] state statute, when considered in the abstract, may be condemned under

the antitrust laws only if it mandates or authorizes conduct that necessarily constitutes a violation of the antitrust laws in all cases, or if it places irresistible pressure on a private party to violate the antitrust laws in order to comply with the statute. *Such condemnation will follow under § 1 of the Sherman Act when the conduct contemplated by the statute is in all cases a per se violation.* If the activity addressed by the statute does not fall into that category, and therefore must be analyzed under the rule of reason, the statute cannot be condemned in the abstract. Analysis under the rule of reason requires an examination of the circumstances underlying a particular economic practice, and therefore does not lend itself to a conclusion that a statute is facially inconsistent with federal antitrust laws. (Emphasis supplied.)

*Id.* 458 U.S. at 659, 661, 102 S.Ct. at 3299, 3300. Thus, the essential question is whether Missouri's price posting laws constitute a *per se* violation in all cases.

Relying on *California Retail Liquor Dealers Assn. v. Midcal Aluminum, Inc.,* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980), respondent asserts that Missouri's price posting laws constitute resale price maintenance, a *per se* violation of the Sherman Act. *Rice,* 458 U.S. at 659–60, 102 S.Ct. at 3299–3300. Although the Supreme Court held in *Midcal* that California's price posting laws constituted resale price maintenance, those provisions are dissimilar to the provisions challenged here. California's liquor control laws required producers and wholesalers to enter into fair trade contracts whereby the producer established not only the price it charged the wholesaler but also the price the wholesaler charged retailers. If they failed to enter into such an agreement the wholesaler was subsequently required to post a price schedule which bound all other wholesalers in the area. *Midcal Aluminum, Inc. v. Rice,* 90 Cal.App.3d 979, 153 Cal.Rptr. 757 (1979), aff'd sub nom. *Midcal, supra.* California's price posting scheme was "not one which merely require[d] each distributor to speci-

fy prices, [but rather was] for the purpose of fixing prices." *Id.* 153 Cal.Rptr. at 761. The Supreme Court had no difficulty in determining that California's wine pricing system facially conflicted with the Sherman Act because it mandated resale price maintenance. *Midcal,* 445 U.S. at 103, 100 S.Ct. at 942; *Rice,* 458 U.S. at 659, 102 S.Ct. at 3299.

■■ As summarized above, Missouri's price posting laws are distinguishable. Initially, each wholesaler determines individually the price it will charge retailers. While the wholesalers are afforded an opportunity to change their prices they are not so required; any change must be based on their independent judgment. The price posting laws neither authorize nor sanction individual wholesalers to contract, combine or conspire to fix the prices that they or any other wholesaler or retailer charge. Rather, the price posting laws mandate unilateral action on the part of every wholesaler in order "to preclude a licensee in one phase of * * * liquor traffic from controlling other * * * phases * * *." *Brown-Forman Distillers Corp. v. Stewart,* 520 S.W.2d 1, 7 (Mo. banc 1975). The mere fact that the state makes the wholesalers' initial prices available for public display does not itself constitute a *per se* violation of the Sherman Act. *United States v. Citizens & Southern National Bank,* 422 U.S. 86, 113, 95 S.Ct. 2099, 2155, 45 L.Ed.2d 41 (1975); *Joseph E. Seagram & Sons, Inc. v. Hostetter,* 384 U.S. 35, 45, 86 S.Ct. 1254, 1260, 16 L.Ed.2d 336 (1966). Thus, while California's price posting laws were *per se* illegal as constituting resale price maintenance, Missouri's clearly are not. *See Enrico's Inc. v. Rice,* 551 F.Supp. 511 (N.D. Cal.1982); *United States Brewers Assoc., Inc. v. Healy,* 532 F.Supp. 1312 (D.Conn. 1982) [rev'd on other grounds, 692 F.2d 275 (2nd Cir.1982) ]; *Serlin Wine and Spirit Merchants, Inc. v. Healy,* 512 F.Supp. 936 (D.Conn.1981), aff'd sub nom. *Morgan v. Division of Liquor Control,* 664 F.2d 353 (2nd Cir.1981); *Battipaglia and Bacchus Selections, Inc. v. New York State Liquor Authority,* Trade Cas. (CCH) ¶ 64,964 (S.D.

N.Y.1982); *Louis Finocchiaro, Inc. v. State of Nebraska and Nebraska Liquor Control Commission,* No. 366 (D.C., Lancaster Co., Neb.1983); *Martignetti Grocery Co. v. Alcoholic Beverages Control Commission,* No. 81–1305 (Mass. Superior Ct., Middlesex Co. 1983).

The parties stipulated that the price posting laws do not authorize or compel wholesalers to agree among themselves for the purpose of contracting, combining or conspiring to fix prices. Nevertheless, respondent ostensibly argues that the price posting laws induce a tacit agreement among wholesalers to stabilize prices. In this as in other areas of coincident federal and state regulation, we will not seek out a conflict where none exists. *Seagram & Sons,* 384 U.S. at 45, 86 S.Ct. at 1260. Talismanic invocation of the words "price fixing" and "restraint of trade" do not justify automatic application of the fatal *per se* rule. To characterize these price posting provisions as *per se* "price fixing" or "restraint of trade" is to ignore that their purpose is to defeat such pernicious consequences. *Brown-Forman, supra.* For the same reasons articulated above, we find no *per se* violation due to price fixing or restraint of trade; therefore, we cannot constitutionally condemn Missouri's price posting laws as mandating conduct that constitutes a violation in all cases or that places irresistible pressure on private parties to violate the antitrust laws. *Rice,* 458 U.S. at 661, 102 S.Ct. at 3300.

Because of our resolution of the preemption issue, we need not consider whether the price posting laws would be saved under the state action doctrine of *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), or under the Twenty-First Amendment. *Id.* 458 U.S. at 662 n. 9, 102 S.Ct. at 3301 n. 9.

We decline on the record preserved on this appeal to rule the issue of whether Missouri's price posting laws are invalid under the "rule of reason." *Rice, supra.* The judgment of the trial court is reversed.

RENDLEN, C.J., and WELLIVER, HIGGINS, GUNN and BILLINGS, JJ., concur.

BLACKMAR, J., dissents in separate opinion filed.

BLACKMAR, Judge, dissenting.

The principal opinion suggests that the purpose of Missouri's liquor price posting laws is to defeat the "pernicious consequences" of price fixing and restraint of trade. I simply cannot discern this purpose in the legislation, but rather conclude that the necessary effect, and therefore the intent, of the Missouri statute and accompanying regulations is to mandate a scheme for the fixing of prices subversive of the purpose of the Sherman Act, 15 U.S.C. § 1.

I agree with the principal opinion in holding that the trial court was incorrect in finding that the governing statute and regulations effectuate "resale price maintenance." Resale price maintenance, a vertical restraint, involves efforts by manufacturers or wholesalers to set the prices below which retailers may not subsequently resell their products. *See California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.,* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980); *Dr. Miles Medical Co. v. John D. Park & Sons Co.,* 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502 (1911). Missouri's liquor price posting laws neither involve nor condone efforts in setting minimum retail prices, as did the statutes held invalid in *Midcal.* The issue is foreign to the case, and its injection by respondent, and countenancing by the trial court, only sows confusion.

The principal opinion, however, after properly noting the absence of any provision which could possibly be considered as effecting resale price maintenance, does not set forth an adequate analysis as to what our statute, as implemented by regulation, actually does.

Section 311.334, RSMo 1978 requires each wholesaler to file monthly a schedule of the prices it intends to charge and the discounts it intends to grant to its retail customers during the ensuing month. Sec-

tion 311.336, RSMo 1978 specifically requires that

> Each such schedule shall be filed on or before the tenth day of each month, and the prices and discounts therein set forth shall become effective on the first day of the calendar month following the filing thereof, and shall be in effect for and during such calendar month.... No brand of liquor or wine shall be sold or purchased for a retailer by a wholesaler or by a retailer through a wholesaler except at the price or prices then in effect according to the wholesaler's filed schedule, and no discount shall be granted except as set forth in the schedule then in effect.

Ten days after wholesalers file their price schedules, the individual price schedules are made available for inspection by all other wholesalers. § 311.336. A wholesaler is then given the opportunity, within three days after the schedules are made available for inspection, to file amendments to its price schedule. All interim price amendments must be downward. No upward price changes are permitted during the amendment period. But a price change may not go below the lowest price posted by a competitor. § 311.336; 11 C.S.R. 70–2.190(2)(C)1. and 2.

The above requirements of posting liquor wholesale prices for the upcoming month are not the only controls placed upon liquor wholesalers in Missouri. Section 311.332, RSMo 1978, states in pertinent part that

> It shall be unlawful for any wholesaler licensed to sell intoxicating liquor and wine ... to discriminate between retailers or in favor of or against any retailer or group of retailers, directly or indirectly, in price, in discounts for time of payment, or in discounts on quantity of merchandise sold, or to grant directly or indirectly, any discount, rebate, free goods, allowance or other inducement, *excepting a discount not in excess of one percent for quantity of liquor and wine, and a discount not in excess of one percent for payment on or before a certain date.*

(emphasis supplied). Section 311.336 empowers the Supervisor of the Department of Liquor Control to "make such rules and regulations as shall be appropriate to carry out [these laws]." The Supervisor has promulgated 11 C.S.R. 70–2.190, purportedly to effectuate the above-mentioned preventions.

These regulations add increasing restrictions upon the liquor wholesaler's ability to compete in an open market economy. The regulations provide that if a wholesaler decreases a posted price by more than two percent of the prior month's posted price, that wholesaler's price stands to be frozen at the lower level for six months.[1] Specifically, § 70–2.190(2)(E)1. states that

> It shall be presumed (subject to rebuttal as hereinafter set forth) that any price scheduled by any licensed wholesaler which is less than ninety-eight per cent (98%) of the price scheduled by the same licensed wholesaler for the same brand ... on the price schedule of said licensed wholesaler for the prior month represents an attempt by such wholesaler to give an indirect quantity discount in excess of one per cent (1%).

This is said to be a "rebuttable" presumption that can be overcome by reasonable proof to the supervisor of liquor control that the scheduled price is a fair wholesale market price for the merchandise, rather than an indirect quantity discount in excess of one per cent.

Particularly noteworthy is the regulation which governs the introduction by a wholesaler of a new brand, which it has not previously handled but which has been sold in Missouri by other wholesalers. The regulation is described in the stipulation of facts on which the case was tried, in the following language:

> A new product may be added by any wholesaler to its price filing at any time during any month, provided that the brand is registered with and approved by the Supervisor and a supplemental price

1. 11 C.S.R. 70–2.190(2)(E)1.

schedule is filed with the Supervisor. If the brand being added has never previously been sold in the State by any wholesale licensee, the wholesaler intending to sell it may schedule it at any price it desires. *If a wholesaler wishes to add a brand, or size of a brand, that has been previously sold by another wholesaler, the brand may not be scheduled at a price lower than the price currently filed by other wholesalers during the first month such brand is sold by the wholesaler adding same* [11 CSR 70–2.-190(2)(A)]. (Emphasis supplied).

These provisions inject a degree of rigidity into the price structure of wholesalers which surely would be illegal, if it came about as the result of agreement among private parties.[2] It may be objected that a state-imposed regulation is not necessarily invalid simply because an agreement among private parties would be, citing *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), but the force of that case is seriously weakened by *Midcal, supra,* and the erosion of the Sherman Act is the same whether the state legislation expressly sanctions illegal agreements or makes express agreements unnecessary.

Once a wholesaler posts a price, the price is frozen for 30 days. The only exception comes about if another wholesaler posts a lower price, in which event others may meet, but not go below, that posted price. A very substantial damper is imposed on any price reduction of more than 2%. The wholesaler who posts a reduction of this kind stands to be frozen at the lower price for six months, unless the bureaucracy can be persuaded to grant an indulgence.

Small wonder, then, that wholesale prices are hardly ever reduced substantially.[3]

The price fixing aspects of the law are especially vicious when a new brand is introduced between postings. The wholesaler doing so is not free to set the initial price, if any other wholesaler has a posted price for the brand, but must post a price which is not lower than the lowest posted price of any other wholesaler. The newly introducing wholesaler, furthermore, may not set a lower price at the next posting without facing the possibility of a six month freeze, as described above.

The whole Missouri program has the predictable effect of inhibiting price reductions and introducing rigidity into the whole price structure. Wholesalers are not free to compete by changing prices dictated by their economic judgment. We must decide whether a scheme having this inevitable and predictable effect is consistent with the policy of the Sherman Act.

In evaluating the anticompetitive effect of Missouri's liquor price posting laws and regulations, the principal opinion places strong and unjustified reliance on the United States Supreme Court's decision in *Rice v. Norman Williams Co.*, 458 U.S. 654, 102 S.Ct. 3294, 73 L.Ed.2d 1042 (1982). *Norman Williams* involved a "vertical non-price restraint" which is not a per se violation, but rather is analyzed under the rule of reason to determine Sherman Act illegality. *See Continental, TV, Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977).

The antitrust challenge in *Norman Williams* was to a provision of California's

---

**2.** "Under the Sherman Act a combination formed for the purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodity in interstate or foreign commerce is illegal per se." *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223, 60 S.Ct. 811, 844, 84 L.Ed. 1129 (1940). *See, Sugar Institute, Inc. v. United States*, 297 U.S. 553, 56 S.Ct. 629, 80 L.Ed. 859 (1936) (group of competitors meeting and collectively agreeing to exchange price information for the purpose of maintaining a uniform price structure constituted price fixing); *United States v. Container Corp. of America*, 393 U.S. 333, 89

S.Ct. 510, 21 L.Ed.2d 526 (1969) (agreement among competitors to exchange price information which had the effect of stabilizing prices was illegal).

**3.** The parties have stipulated that the Missouri price posting laws may have the effect of restraining price competition and stabilizing prices. In addition, appellant states in its brief that on two occasions, "in December, 1981, and January, 1982," wholesaler petitions for relief from the six month price freeze were successful.

alcoholic beverage laws which stated that a "licensed importer shall not purchase or accept delivery of any brand of distilled spirits unless he is designated as an authorized importer of such brand by the brand owner or his authorized agent."

The statute apparently was enacted in response to the perceived extraterritorial effects of Oklahoma's "open wholesaling" statutes, whereby a licensed California importer who was unable to obtain distilled spirits through the distiller's established distribution system could obtain them from Oklahoma wholesalers. The respondent-importers challenged enforcement of California's designation statute prior to the date it was to go into effect as per se illegal on its face.

Relying on its decision in *GTE Sylvania*, the Court held that a manufacturer's use of vertical non-price restraints is not per se illegal, but rather is subject to the "rule of reason", explaining its conclusion as follows:

Because restraints on intraband competition may promote interbrand competition, we concluded that non-price vertical restraints should be scrutinized under the rule of reason.... After our decision in *GTE Sylvania*, it cannot be said that every attempt by a manufacturer to restrain competition in its own products is illegal under the Sherman Act.

California's designation statute merely enforces the distiller's decision to restrain intraband competition. It permits the distiller to designate which wholesalers may import the distiller's products into the State.... The designation statute does not *require* the distiller to im-

pose vertical restraints of any kind; that is a matter for it to determine. The *number* of importers which may be designated by the distiller is not limited; the designated importer is not required to sell the imported brand to retailers within in a specified area or from a specified location within the State.

*Id.* 458 U.S. at 661–62, 102 S.Ct. at 3300–01 (citations omitted). The Court further indicated that for purposes of determining whether the distiller's ability to restrict intrabrand competition was per se illegal it was irrelevant that the activity had the "imprimatur of a state statute."[4] *Id.* 458 U.S. at 662, 102 S.Ct. at 3300–01, *citing New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 439 U.S. 96, 110–11, 99 S.Ct. 403, 412, 58 L.Ed.2d 361 (1978) for the proposition that the "designation statute might have an anticompetitive effect when applied in concrete factual situations." *Norman Williams, supra,* 458 U.S. at 662 n. 7, 102 S.Ct. at 3300 n. 7. The anticompetitive effect of the Missouri statute is manifest. A case dealing with restraints subject to the rule of reason is not authoritative in its application to per se restraints.

The principal opinion, in relying on *Norman Williams*, gives far too little attention to *California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.*, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980). That case is highly applicable to the present case because price fixing, like resale price maintenance, is a per se violation of the Sherman Act.[5] Price fixing, as a matter of fact, is the prime restraint of trade against which the Sherman Act is

---

**4.** The effect of the statute was "simply to counteract the perceived extraterritorial effects of Oklahoma's alcoholic beverage laws, which, as once understood, operated to deprive the distiller of control over its distribution system nationwide. Thus, California's designation statute merely restored what Oklahoma had taken away: the distiller's ability to determine which wholesalers may import its products into California." *Norman Williams, supra,* 458 U.S. at 662, 102 S.Ct. at 3300–01.

**5.** Under the antitrust laws, numerous practices have been held to be illegal per se without

regard to their precise purpose or harm. In addition to price fixing, these practices include resale price maintenance, *United States v. Parke, Davis & Co.,* 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960); horizontal division of markets, *United States v. Addyston Pipe & Steel Co.,* 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136 (1899); group boycotts, *Fashion Originators' Guild v. F.T.C.,* 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949 (1941); and tying arrangements, *International Salt Co. v. United States,* 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20 (1947).

directed. *Midcal* is important because it holds that a state statute must fall if it sanctions per se Sherman Act violations.

It is not a sufficient answer to say, as the principal opinion does, that

The price posting laws neither authorize nor sanction individual wholesalers to contract, combine or conspire to fix the prices that they or any other wholesaler or retailer charge. . . .

The wholesalers do not need an agreement. The statute and regulations effectively allow them to place a floor under prices, just as fully as though the wholesalers had reached an agreement. The statutory plan must fail because it is subversive of the purpose of the Sherman Act. Were this not so, the entire program of the federal antitrust laws could be rendered nugatory by state legislation which allows competitors to uphold prices without the necessity for an agreement. State legislation which is inconsistent with the established purpose of valid federal regulation cannot survive.

Appellant Director maintains that the validity of the price posting laws is demonstrated by the state legislature's purpose in their enactment, stating in his brief as follows:

The Missouri price posting laws were enacted by the Missouri General Assembly to prohibit price discrimination by wholesalers in their sales to retailers. The price posting laws have accomplished this purpose by requiring wholesalers to file their prices and discounts with the state and further requiring wholesalers to adhere to their posted prices and discounts in their sales to retailers.

I agree with the holding in the principal opinion that the mere requirement of posting of wholesale prices does not contravene the letter or the policy of the Sherman Act. Nor do I question at this point the provisions of the Missouri statute which limit the discounts which may be granted for quantity purchases and prompt payment. It is not improper for a state to require that a wholesaler make the same, or substantially the same price available to all retailers he chooses to deal with.

Missouri's liquor price posting laws, however, do not merely require the posting of prices. The statutes and regulations go beyond this and drastically restrict a wholesaler's ability to change prices that would be available to *all* retailers. The effect of 11 C.S.R. 70–2.190(2)(E)1. is the imposition of a very restrictive time restraint (six month freeze) on a wholesaler who wishes to lower his prices more than 2% below his prior monthly price schedule. The suggestion in the regulations that a reduction of more than 2% creates a rebuttable "presumption" of a purpose of granting an impermissible quantity discount seems palpably absurd, if the posted price must be made available to all. The real purpose of the regulations—that of inhibiting vigorous price competition—becomes readily apparent.

In the view I take of the case, I must deal with the appellants' attempt to justify the challenged statute and regulations (1) under the Twenty-First Amendment and (2) under the "state action" doctrine of *Parker v. Brown, supra. Midcal* answers both points. The present case involves the sale of alcoholic beverages in Missouri rather than importation contrary to the laws of Missouri, and is not within the state's extended sphere of control as defined in the Twenty-First Amendment. There is nothing remotely resembling the expansive regulation of the marketing of raisins, a local crop, which was involved in *Parker v. Brown, supra.* The wholesalers, not the state, establish the prices. The vice in the Missouri scheme is that it introduces unwarranted inhibitions into their ability to lower prices.

I cannot avoid the conclusion that the Missouri statute and regulations are at war with the Sherman Act, and that the judgment that they are facially invalid is correct in spite of the erroneous conclusion as to resale price maintenance. Remand is probably required because of that erroneous conclusion, but the remand should be for a determination of the portions of the

**424**

statute and regulations which must be held invalid under the principles here expressed.